P. H. CAIN and others v. COMMISSIONERS of Davie County.

*Fence-Law—Local Option Legislation—Taxation—Local Assessment.*

1. Under the provisions of the " fence law" act of 1881, ch. 172, the commissioners of Davie county were proceeding to collect the tax assessed upon land to defray the expenses of building the fence, and the court refused to grant an injunction to restrain them ; *Held* no error.
2. *Held further :* The provision in said act that it should take effect upon the happening of a contingent event, to-wit, upon its being approved by the necessary number of qualified voters, is not a transfer of legislative power to the voters.
3. The ruling in *Simpson* v. *Commissioners*, 84 N. C., 158, that the decision of the commissioners to the effect that a majority of the voters favored the enactment is final, approved.
4. The constitutional provision that taxation shall be equal, uniform, and within certain limits, does not apply to local assessments imposed upon owners of property, who in respect to such ownership are to derive a special benefit in the local improvements for which the tax is expended.

*Manly* v. *Raleigh*, 4 Jones Eq., 370 ; *Caldwell* v. *Justices*, *Ib.*, 323 ; *Simpson* v. *Com'rs*, 84 N. C., 158 ; *Norment* v. *Charlotte*, 85 N. C., 387 ; *Young* v. *Henderson*, 76 N. C., 420 ; *Brodnax* v. *Groom*, 64 N. C., 244, cited and approved )

MOTION by plaintiffs for an injunction to restrain defendant commissioners from collecting a certain tax, heard at Fall Term, 1881, of DAVIE Superior Court, before *Eure, J.*

The general assembly, at its session in 1881, passed an act intended, as expressed in its title, to prevent live stock from running at large in the counties of Davie and Anson, by erecting a fence around their boundaries, the fifteenth section of which is in these words:

" Whenever a majority of the qualified voters of said counties, or any township thereof, as appears by the returns of votes cast for the various electors of president of the United States at the last presidential election, shall by petition, duly signed, signify to the board of county commissioners of Davie and Anson counties, their approval of the provisions of this act, that thereupon the provisions of this act shall be in full force and effect; and the said board of county commissioners shall thereupon advertise by posted notices at five or more public places in each township in said counties, and in a newspaper in the town of Mocksville, the enforcement of the provisions of this act, and proceed to execute the duties imposed upon them by the provisions of this act; and the board of commissioners of Anson county shall likewise advertise by posting as aforesaid, and by publication in a newspaper established in Wadesboro; provided that before the commissioners of Anson county shall declare the provisions of this act in force, they must be satisfied that a majority of the qualified voters of said county have signed the petition herein provided for." Acts 1881, ch. 172.

The duties the board of commissioners are directed to perform are prescribed in the tenth, eleventh and twelfth sections, as follows:

§10. It shall be the duty of the board of county commissioners of Davie and Anson counties to erect a good and lawful fence around the entire counties of Davie and Anson, or such townships therein as shall avail themselves of the pro-

visions of this act, and to erect gates on all the highways leading into said counties, and to keep the same in good repair.

§ 11. If the owner of any land shall object to the building of any fence, herein allowed, his land not exceeding twenty feet in width shall be condemned for the fence-way as land is now condemned for railroad purposes by the North Carolina railroad company; provided that no fence shall divide a tract of land against the consent of the owner, but may follow the boundary lines thereof; provided further, that when a public highway divides a tract of land, the fence may follow the highway even against the consent of the owner of the land so divided.

§ 12. That for the purpose of carrying out the provisions of section ten of this act, the county commissioners may levy and collect, as they do other taxes, a special tax upon all the real property taxable by the state and county within the county or township which may avail themselves of the provisions of this act.

A petition approving and accepting the act and intended to fulfill the condition preceding its going into effect, containing the signatures of more than a majority of the electors who voted at the election designated, was presented to the commissioners; and, adjudging a compliance with its requirements, they proceeded to give public notice of the fact and to declare that the act had been approved by the necessary number of qualified voters, and would go into operation and be enforced on and after the first day of May, 1881.

The present action was instituted on April 30th, the day preceding that fixed by the commissioners, and a complaint then filed reciting the substance of the enactment, and the action of the commissioners under it, and alleging as grounds of objection thereto, that

1. The necessary number of qualified voters had not sig-

nified their approval, many of those whose names were signed not being such.

2. The boundary fence would be thirty-five miles in length, onerously expensive to those who were to be taxed for its construction.

3. The tax required would exceed the constitutional limit.

4. The act had not been submitted to a vote and received the popular approval.

5. The restriction of the tax to real estate violates the equality and uniformity prescribed in article five, section three, of the constitution.

6. The taking and appropriating lands for the fence-way cannot be done without indemnity to the owner.

7. The requirement that stock be penned before the construction of the fence is premature and unwarranted.

On May 2nd application was made to the judge at chambers, supported by the verified complaint as evidence, for an injunction, and thereupon it was ordered that the commissioners show cause before him at Winston, on May 17th, why an injunction should not issue, and meanwhile they were restrained from taking further action in the premises. At the hearing of the motion an affidavit of one of the plaintiffs was introduced, containing lists of names of persons on the petitions of approval, who are alleged not to be on the registry of the different townships from which the several petitions profess to come, and also an affidavit of one of the commissioners, avowing the integrity of the conduct of the board in making the canvass and ascertaining the result, and his belief, then and still, that the approval did proceed from a majority of the qualified voters of the county, His Honor denied the motion for an injunction and taxed the plaintiffs with the costs, from which ruling they appeal.

At the fall term following, the plaintiffs make a second application to the succeeding judge for an injunction, and in its support offer an additional affidavit, and say that the

commissioners have levied a tax upon the lands in their county, (while the state and county taxes for general purposes are 69½ cents upon the hundred dollars valuation) of 25 cents additional in disregard of the limitations imposed in the constitution, and that they have improperly used and misappropriated portions of a balance in the county treasury collected for county purposes under the general law. This charge is met by a counter-affidavit of the same commissioner, who states that the fund applied to the building of the fence was intended to be replaced out of the tax levied under the act, none of which had yet come in, and that they intended to use no more of it, and that the 25 cent tax had been assessed in the manner prescribed by law.

This motion was also denied, and the plaintiffs again appealed.

Transcripts in both appeals are sent up and constitute two cases in this court.

*Messrs. Watson & Glenn* and *Furches*, for plaintiffs.
*Mr. J. M. Clement*, for defendants.

SMITH, C. J. After stating the above. It was wholly unnecessary, and attended with useless expense, to prosecute both appeals, since every exception to which the first refusal of the writ is liable lies with equal force against the last, and the same relief is attained by allowing it upon either application. We should be disposed therefore to tax the appellants with the costs of a needless record, if the merits were found to be with them upon the subject matter in dispute, and if we should direct the issuing of the injunction.

The arrest of proceedings to enforce the act is asked upon the several grounds that the form of legislation adopted, making the operation of it dependent upon the volition of voters, is unwarranted as an attempted abnegation of legislative functions; there has not been a compliance with the

precedent condition of a written approval of a majority of the qualified voters; and the provisions of the enactment are repugnant to the constitution.

These we propose to examine.

1. The form of legislation :

It has not been seriously questioned that the legislature may make an enactment to take effect only upon the happening of a contingent event; but it has been earnestly maintained that when the event is the expression of the popular will, ascertained by an election, it is in effect a transfer ot legislative power to the voters. In reference to this distinction, REDFIELD, C. J., in an elaborate opinion delivered in *State* v. *Parker,* 26 Ver., 357, says, that "the distinction attempted between the contingency of a popular vote and other future contingencies is without all just foundation in sound policy and sound reasoning." What differences may be found in the adjudications elsewhere, it is settled by the decision in *Manly* v. *City of Raleigh,* 4 Jones Eq., 370, that such power may be exercised by the legislature, and it is declared that " when it is provided that a law shall not take effect unless a majority of the people vote for it, or it is accepted by a corporation, the provision is in effect a declaration that in the opinion of the legislature the law is not expedient, unless it be so voted for or accepted." This principle underlies all "local option" legislation and is fully recognized and established in this state. *Caldwell* v. *Justices,* 4 Jones Eq., 323.

2. The operation of the act:

The plaintiffs insist that the requisite number of voters have not given their sanction to the law, and that many of them whose names are signed to the petitions are not of the class of qualified voters of the county.

It does not appear, however, that the number of subscribing petitioners exceeds half the number of those who voted at the preceding election of electors of president, and the

commissioners have adjudged the fact that the preliminary condition to the operation of the act has been fulfilled, and acting upon the decision they have entered upon the duties it has enjoined, and given public notice thereof. The proposal is to show the necessary number have not approved, by impeaching the electoral qualifications of a large number of those who have signed the petitions, upon which the action of the commissioners is based, and thus practically reverse their judgment. Is it admissible to do this? In *Simpson* v. *Commissioners of Mecklenburg*, 84 N. C., 158, a similar attempt was made to go behind the determination of the commissioners as to the result of an election to ascertain the will of the voters, and it was said "that under the statute which requires the commissioners after examination of the returns to ascertain and declare the result, their decision upon the returns of an election regularly and properly held is *final and conclusive.* * * * Upon the fair and honest exercise of their judgment in determining the vote, the validity of the act is suspended, and its operation is not left to the uncertainties of a future inquiry." This is decisive of the point, and we can see no ground upon which the present case can be distinguished from that, except that in the latter the duty is prescribed in more explicit terms. They must act when the necessary number of qualified voters "shall by petition signify to the board of commissioners of Davie and Anson counties their approval of the provisions of this act." The commissioners must therefore ascertain and determine the fact when such approval is given, and this being declared, the law by its terms takes effect and they are to proceed to the execution of its commands. It is of the highest importance that laws should be known and certain, and when they are to go into operation upon some contingent event, that event should be conclusively settled and not left open to question by any suitor who may choose to contest the fact upon which its validity depends.

This has been left to the decision of the commissioners, and their decision ought to be and in our opinion is final.

The serious inconveniences and embarrassments that will follow the recognition of the right of the citizen to controvert the truth of the declared fact, are pointed out in the recent case of *Norment* v. *Commissioners*, 85 N. C., 387, and need no reiteration.

3. The method of taxation:

The constitution directs that taxes be imposed by a uniform rule upon moneys, credits and investments, and upon real and personal property according to its true value, (Art. V, § 3,) and that such as are "levied by any county, city, town or township shall also be uniform and *ad valorem* upon all property therein." Art. VII, § 9.

These restraints are referable to taxation of objects in which all have a common interest, and when disregarded render the levy invalid. *Young* v. *Henderson*, 76 N. C., 420, and cases cited. But there is a class of taxes, or as they are often designated, local assessments, which are imposed only upon those owners of property who in respect to such ownership are to derive a special benefit in the local improvements for which they are to be expended, and are not within the restraints put upon general taxation.

After enumerating various objects for which local assessments are made, such as opening streets, constructing levees, laying pipes for drainage, Judge COOLEY remarks, that to warrant the levy of local assessments, there must not only exist in the case the ordinary elements of taxation, but the object must also be one productive of special local benefits, so as to make applicable the principles upon which special assessments have hitherto been upheld." Cooley Tax., 428.

Referring to provisions in the constitution of several states which require uniform and equal taxation on property, the same author says: "The view generally expressed is that though assessments are laid under the taxing power

and are in a certain sense taxes, yet they are a peculiar class of taxes and *not within the meaning of that term, as it is usually employed in our constitutions and statutes.*" *Ib.*, 446.

" A constitutional provision that taxation shall be equal and uniform throughout the state," observes Mr. Justice DILLON, " does not apply to local assessments upon private property to pay for local improvements." 2 Dill. Mun. Corp., § 617. To like effect, Burroughs Tax., § 39.

In *Moore* v. *Stocker*, 1 Allen, 150, HOAR, J., lays down the rule in these words : " When the assessment is made upon persons in respect of their ownership of a particular species of property which receives a peculiar benefit from the ex-penditure of the tax, it is valid, although it does not operate upon all persons and property in the community." *Dargan* v. *Boston*, 12 Allen, 223.

In *People* v. *Mayor, &c., of Brooklyn*, 4 N. Y., 410, the court declare : " The amount of each man's benefit in general taxation cannot be ascertained and estimated with any de-gree of certainty, and for that reason a property tax is adopted instead of an estimate of benefits. In local taxa-tion however for special purposes, the local benefits may in many cases be seen, traced and estimated with reasonable certainty. At least this has been supposed and assumed to be true by the legislature, whose duty it is to prescribe the rules on which taxation is to be apportioned, and whose de-termination of this matter, being within the scope of its lawful power, is conclusive. "The reasoning in this case," is the comment of Judge COOLEY, " has been generally accepted as satisfactory, and followed in subsequent cases," which are referred to in the margin. Cooley Const. Lim., 506.

We can scarcely conceive a case more clearly within the compass of the rule than that now under consideration. The general law requires a sufficient fence to be built and kept up around all cultivated land to protect it from the depreda-tions of stock, at a very great and unceasing expense, becom-

ing the more onerous as the material used in its construction becomes scarcer and more costly. The enactment proposes to dispense with separate enclosures for each man's land, and substitute a common fence around the county boundary to protect all agricultural lands from the inroads of stock from abroad, and the fencing in of stock owned within its limits. It creates a community of interest in upholding one barrier in place of separate and distinct barriers for each plantation, and thus in the common burden lessens the weight that each cultivator of the soil must otherwise individually bear. As the greater burden is thus removed from the land owner, he, as such, ought to bear the expense by which this result is brought about. The special interest benefited by the law is charged with the payment of the sum necessary in securing the benefit. This and no more is what the statute proposes to do, and in this respect is obnoxious to no just objection from the taxed land-proprietor, as it is free from any constitutional impediments..

4. The excess over the limits of taxation:

From what has been said, this as well as the other provisions of the constitution which prescribe the mode of taxation, are not intended to be, and are not restraints upon the species of local assessments to which the present belongs. But if it were, the objection is removed by the special approval of the general assembly given in the act itself. Const., Art. V, § 6, interpreted in *Broadnax* v. *Groom*, 64 N. C., 244, and in numerous legislative acts.

In our opinion all the grounds upon which the court is asked to interpose and frustrate the execution of the enactment are untenable, and the injunction was properly refused.

We, therefore, declare there is no error, and sustain the ruling of His Honor. Let this be certified.

No error. .Affirmed.