JOSEPH M. SMALLEY v. BOARD OF COMMISSIONERS OF RUTHERFORD COUNTY.

(Decided April 26, 1898.)

*Injunction—Fence Law—County and Township Elections for Fence Law—Constitutional Law—County Charge.*

1. The provisions of Chapter 20, Volume 2, of *The Code*, relating to the submission of the stock or fence law to the electors of Counties or smaller territorial divisions thereof, are not inconsistent with the principle of local self government.

2. Where certain townships or smaller sub-divisions of a county have adopted the fence law the electors therein may petition and vote in an election for its extension to include the County limits. In such case, however, the expense of the township or smaller territorial adoption of the law, previously incurred, should not be made a charge upon the county.

MOTION for an injunction to restrain defendants from levying an assessment on lands of plaintiff and from attempting to build a fence and enforce the stock law in a certain territory in Rutherford county, made in a civil action commenced in the Superior Court of Rutherford

county on the 26th day of March, 1898, heard before *Greene, J.,* holding the courts of the 11th Judicial District at Chambers in Lincolnton, North Carolina, on the 8th day of April, 1898.

His Honor rendered judgment denying the motion for injunction, dissolving the temporary restraining order and taxing the plaintiff with costs of the motion.

To which ruling and judgment the plaintiff excepted and appealed and assigned the following as errors:

1. That it being admitted in the answer that the voters in a large portion of Rutherford county, which was already under the operations of the stock law, were allowed to vote and did vote in the election held in said county on February 1st, 1898, on the question of extending the stock law over that portion of said county which was not theretofore under the operation of the stock law, it was error in the court to refuse to grant an injunction until the hearing.

2. That it being admitted in the answer that a part of Rutherford county, which had voted on the question of stock law or no stock law within one year prior to the 1st day of February, 1898, was allowed to vote and did vote in the election on said 1st day of February, 1898, it was error to deny the motion to continue the injunction till the hearing.

3. That it being admitted in the answer that the order of the Commissioners providing for the election on February 1st, 1898, was based upon petitions signed by voters of Rutherford county, many of whom resided in that portion of said county where the stock law already prevailed, the plaintiff insists that the said order was improvidently made and the injunction ought, therefore, to have been continued till the hearing.

4. It being doubtful, from the complaint and answer,

whether or not a majority of the qualified voters, either in the old or new territory to be affected, signed the petitions upon which the order of election was made, and it appearing from the complaint that the main relief sought is an injunction the same should have been continued till the hearing."

*Messrs. R. C. Strong, A. C. Avery* and *Avery & Erwin* for plaintiff (appellant).
*Messrs. M. H. and T. B. Justice* for defendants.

FAIRCLOTH, C. J.    The subject of "Fences and Stock Law" is regulated by *The Code*, Volume 2, Chapter 20. We find that prior to 1898 certain townships, districts or territories in Rutherford County had, in pursuance of Sections 2813 and 2814 of *The Code*, by regular proceedings, adopted the stock law and that the County Commissioners, on petition of the required number of qualified voters, caused a county election under Section 2812 to be held on February 1, 1898, at which election a majority of the voters of the County, including those already under the law and those not under the stock law, voted in favor of the "Stock Law" and that the regulations, fencing, etc., were about completed on April 1, 1898.

This action, commenced on March 26, 1898, by a citizen of the territory not within the limits of the territories already under the stock law, is brought to restrain the defendants from proceeding under the election of February 1, 1898, and to restrain them from levying a county tax to defray the expenses thereof. His Honor refused to issue such an order and the plaintiff appealed to this court.

121—39

The underlying idea in this purely statutory law, Chapter 20, is to refer the question to the will of the people in Counties, and in less territorial divisions, when circumstances and different local conditions justify or require it. It is difficult to see how such a law can be inconsistent with the principle of local self government. It appears to be just the reverse. The plaintiff's contention is that those townships, already under the operation of the law, have no right to petition or vote for its extension to include County limits. If that be so, it would be within the power of one township to adopt the law, and the county would be thereby deprived of its privilege under Section 2812. So that, if a large majority of townships desired the law, they must have it as townships only—resulting in "stock law" and no "stock law" territories lying around each other, with separate fences and gates across the public roads at an expense much greater than one county system. This would be an extreme view of the principle of local self government, and we cannot believe the legislature so intended.

The imposition complained of by the plaintiff is the imposition necessarily imposed by the principle that the majority must rule. A government which protects must control, and when it does so through the will of the majority, there is no wrong done; except the rule that minorities must submit to the will of the majority. *Damnum absque injuria.* We approve his Honor's ruling, but we think the cost and expense of the township or territorial adoption of the law, previously incurred, should not be made a charge on the county.

Affirmed.

FURCHES, J., dissenting: Soon after the adoption of the first Constitution of North Carolina, the State, by

legislative enactment, changed the English rule of fencing in, and adopted the rule of fencing out stock. This remained the law until within the last 25 years, when a revolution was commenced. It is said revolutions never go backwards and certainly this has not. It commenced by the passage of local acts, many of them against the expressed will of the people, who had voted against the change, as in Rowan and other counties. Other Acts were styled local option Acts, but many of them were not submitted to a vote of the people, but by allowing the Board of County Commissioners to determine upon petition when a majority of the county wanted it, as in Davie county, where all the names signed to the petitions were counted; whether they were non-residents or minors made no difference. *Cain* v. *Commissioners*, 86 N. C., 8.

In the history of fence laws, to be found in our Statute books and in our Supreme Court Reports, it will be found that the means of making these changes was always adequate to effect the end in view—the "no fence law" side of the question. *Cain* v. *Commissioners*, 86 N. C., 8; *Newsom* v. *Earnheart*, 86 N. C., 391; *Simpson* v. *Commissioners*, 84 N. C, 158.

At the commencement of this revolution against the fence law, as it had stood for more than a hundred years, there was not a man in North Carolina who did not hold his out-lying lands (those not inclosed) subject to the right of common pasture, and this change was a great hardship on the poor, non-land owners of the State, and those who only owned a small piece of land with a cabin on it filled with tow-headed children.

I do not deny but what the old law of fencing out stock might be changed by legislation, but I do deny that it has been done in many instances by the fair

honest vote of a majority of the qualified voters.    There
may be exceptional cases where this has been done, but
the rule has been the other way.    This revolution will
move on, and what I may say will not arrest it in its
movements.    It is not said with that expectation.

But the opinion in this case is put on the ground of
*local self government*, the right of · the majority to
govern.    I am a friend of local self government, but it
is a mistake to call this local self government.    It is
true that Section 2812 of *The Code* provides for submit-
ting the question to the vote of the county; Section
2813 for submitting the question to a township; and
Section 2814 for submitting the question to a territory,
less than a township.    Upon these Sections the opinion
of the Court is placed, and I rest this dissenting opinion
upon these Sections.

The election was ordered in January, 1898, and it is
admitted that several townships of Rutherford. county
were then under the operation of the no-fence law, by
reason of former elections in those townships.    It is ad-
mitted that citizens in these townships already under
the no-fence law, petitioned for and voted in this elec-
tion of January, 1898.    That while the law provides for
a resubmission of the question of no-fence to territories,
where it has failed to carry, there is no authority for
submitting the question to a county, township or terri-
tory where it has carried.    This being so I hold that it
was error and the commissioners had no right to sub-
mit this question to such townships or territories as al-
ready had the law.

The outside territory had not been allowed to vote in
the elections that had established the no-fence law in.
the territories that had adopted it; then why should
they be allowed to interfere and vote it upon other

townships that did not want it? Suppose upon the whole vote of the county (election January, 1898) a majority in the county had been against the no-fence law; will it be contended that the townships that had theretofore adopted it would be deprived of it by this vote? That is, would the no-fence law right have been taken from them and they remitted to the old law? If not (and it is not contended that they would) what right had they to vote? The right to vote when they would not be affected by the result, let that be one way or the other? A right to vote to place a burden on others that does not affect them? My idea of local self government has been the submission of a question to the vote of the people to be affected by the result. This is the true theory of local self government. But to submit the rights of one territory to the vote of another territory, not to be affected by the result of their vote, is not local self government.

It is said that, unless this were so, that the territory already having the no-fence law, are allowed to vote— the outside territory is powerless, that they can never have the benefit of this law. I do not admit the truth of this proposition. The whole of the outside territory can join and have an election, or any one or more of the townships may do so. This had been done as to the township that already had the no-fence law. Why may not the other townships do like those that had the no-fence law?