## BLACK v. COMMISSIONERS.

(Filed October 22, 1901.)

1. COUNTIES — *County   Commissioners — Necessary   Expenses — Courts—Municipal Corporations—Taxation.*

The courts have a right to say what are necessary expenses of a county, but they can not control the judgment of the county commissioners in incurring necessary expenses.

2. COUNTIES—*Necessary Expenses—Court-house—Taxation.*

Building a court-house is a necessary county expense, and the county commissioners may contract for building a court-house without special legislative authority if a sufficient amount of money can be raised by taxation within the constitutional limitation.

3. COUNTIES—*Taxation—Necessary Expenses—The Constitution, Art. II., Sec. 14, Art. VII., Sec. 7—Act 1901, Chap. 598.*

An act authorizing the issuance of county bonds for a necessary county expense need not be submitted to the people for ratification unless the act itself provides therefor.

4. STATUTES—*Enactment—Ratification—Presumptions—Conclusive —The Constitution, Art. II., Sec. 14.*

The ratification of an act by the General Assembly is conclusive evidence that it passed three several readings.

5. STATUTES—*Enactment—Ratification—Yeas and Nays—The Constitution, Art. II., Sec. 14.*

It is not necessary to enter the yeas and nays on an act to raise revenue for a necessary county expense.

6. COUNTIES—*Statutes—Necessary Expenses.*

Where an act authorizing the issuance of county bonds to erect a court-house provides for a building committee, such provision, though authorizing an extravagance, does not affect the validity of the act.

7. PRESUMPTIONS—*Necessary Expenses—Counties—County Commissioners.*

It will not be presumed that expenses incurred by county commissioners are necessary where the pleadings make such question an issue.

8. PUBLIC OFFICERS—*Breach of Trust—County Board of Education—County Commissioners—School Funds.*

The board of education, in lending its fund to the county commissioners, is liable in a civil action, if not to criminal proseution.

ACTION by W. P. Black and E. B. Atkinson against the Board of Commissioners of Buncombe County, heard by Judge *Frederick Moore,* at Chambers, in Asheville, on the

28th day of December, 1901.   From an order dissolving a temporary restraining order, the plaintiff appealed.

*H. B. Carter,* for the plaintiff.
*Chas. A. Webb,* and *Locke Craig,* for the defendants.

FURCHES, C. J.   The Commissioners of Buncombe County having managed their financial matters so that the county indebtedness for *current necessary expenses of the county* on the 1st day of January, 1901, was $59,037.13, and the court-house not being suited to the wishes of the people and the business of the county, they wished to dispose of the old court-house and build a new one; and having taxed the people and property as high as they could, under the constitutional restriction, the Legislature, on the 11th March, 1901, passed and ratified an act (Acts 1901, Chap. 598) intended to enable the Commissioners to issue $100,000 coupon bonds, and to levy a *special tax* to pay the same.   Fifty thousand dollars of those bonds were to be used in building a new court-house, and fifty thousand in paying said indebtedness of Buncombe County. Before the $50,000 bonds could be issued to build a new court-house, the question of "Court-house" or "No Court-house" had to be submitted to a vote of the county and approved by a majority of those voting thereon.   This has been done, and a decided majority of the votes cast were for the new court-house, though a majority of all the qualified voters of the county did not vote for the new court-house.

Under this act, Chapter 598, and the vote of the people thus cast, the Commissioners believed they were authorized to issue $50,000 bonds for the new court-house and $50,000 for county indebtedness, called "the floating debt of the county."   And so believing, the Commissioners undertook to ascertain, itemize and declare what was the outstanding

"floating indebtedness of the county"; and among the list set out by them are such debts as $17,200 due by notes to the Battery Park Bank, $4,000 due Mrs. Featherston by notes, *County Board of Education for borrowed money, due by note,* $9,931.40, and a number of other notes said to be due by the county. The Board, after so ascertaining the indebtedness of the county, proceeded to adopt resolutions providing for the issuance of said bonds—$50,000 for the court-house and $50,000 to pay the "floating indebtedness of the county," and to levy a special tax for the payment of the interest thereon as provided in said act. The plaintiff, believing that the defendant was not authorized to issue said bonds, nor to levy said tax, brought this action to restrain and enjoin the defendant from issuing said bonds or levying or collecting said tax; and plaintiff prayed for an injunction, which being disallowed and the order of injunction refused, plaintiff appealed to this Court. The plaintiff puts his prayer for injunction against issuing the court-house bonds upon the ground that the act, Chapter 598, was not passed according to the Constitutional requirement; that it did not pass three times in each House of the General Assembly; and, to be more specific, that it did not pass its first reading. He further objects to the validity of said act, for the reason that it did not authorize the court-house bonds to be issued until it should be approved by a vote of the people; and he also objects for the reason that it did not require a majority of the *qualified voters* of the county, and that a *majority* of the qualified voters of the county did not vote for the new court-house. He bases his objection to the issuance of the $50,000 bonds to pay "the floating debt" upon the ground that the floating debt, or a large portion thereof, is not for the *necessary* expenses of the county, and that this so appears by the itemized statement of said indebtedness made by the defendant. And this being so, the defendant has no right to issue bonds for

its payment without first having an act of the Legislature authorizing a submission of the question to the *majority* of the qualified voters of the county, and an approval by a *majority* of the whole qualified vote of the county.

These questions will be considered separately, and we will first consider the objections to issuing the court-house bonds. The Courts have the right to say what are necessary expenses of a county, but they have no right to *supervise and control the conduct and judgment of the Commissioners when they are necessary expenses.* *Broadnax v. Groom,* 64 N. C., 244; *Satterthwaite v. Commissioners,* 76 N. C., 153; *Evans v. Commissioners,* 89 N. C., 154; *McKeithan v. Commissioners,* 92 N. C., 243; *Charlotte v. Sheppard,* 120 N. C., 411; *Rodman v. Washington,* 122 N. C., 39; *Mayo v. Washington,* 122 N. C., 5. And we have held that the building a court-house is a *necessary* expense. *Vaughan v. Commissioners,* 117 N. C., 434. But as to the manner in which this expense should be incurred, or as to the cost of the court-house, the Courts have no power to control the same. This is certainly so where it is only a matter of judgment and no *mala fides* is alleged or shown. It therefore follows that the Commissioners of a county have the right to contract for the building of a court-house without any special legislative authority to do so. *Vaughan v. Commissioners, supra; Halcomb v. Commissioners,* 89 N. C., 346—exactly in point. And as the Commissioners have the right to contract for building a court-house without any special legislative authority, they would have the right to pay for the same, and could be compelled to do so if a sufficient amount of money for that purpose could be raised by taxation within the constitutional limitation. *Charlotte v. Shepard,* 122 N. C., 602. So it is only necessary to have special legislative authority to levy a special tax when the money can not be raised under the general provisions, owing to the constitutional limitation. When this can not be done under

the general law, owing to the constitutional limitation, there must be special legislative authority to levy a tax for such purpose; but such special act need not be submitted to the people for their ratification. *McCless v. Meekins,* 117 N. C., 34; *Tate v. Commissioners,* 122 N. C., 812; *Smathers v. Commissioners,* 125 N. C., 480. It is therefore seen that the act of 1901, Chapter 598, need not have been submitted to the people for their ratification. As to the manner of its passage, it appears that the ayes and noes were duly entered on the Journals upon the second and third readings on two several days in each House, as required by the Constitution, Article II, section 14. The ratification is conclusive evidence that it was read three several times in each House. *Carr v. Coe,* 116 N. C., 223, 28 L. R. A., 737, 47 Am. St. Rep., 801. The Judge finds as a fact that the three readings were on three several days, and he finds this fact as to the first reading in each House from the entries on the bill and on the calendar. This is not a matter required by the Constitution to be shown by the Journals, and the entries on the calendar and bill are both consistent with, not contradictory of, what does appear on the Journals, and the finding of fact by the Judge is sustained. But as the act itself provided for its submission to the people, and that the Commissioners should not be authorized to build the courthouse nor to levy the special tax until it was submitted to the people and approved by a *majority* of the votes cast, it was necessary to do this. This submission was a condition precedent, and not a delegation of legislative power, as claimed by the plaintiff. It was, to that extent, a local option act, the constitutionality of which has been many times sustained by this Court. *Cain v. Commissioners,* 86 N. C., 8; *Simpson v. Commissioners,* 84 N. C., 158; *Evans v. Commissioners,* 89 N. C., 154; *Halcombe v. Commissioners,* 89 N. C., 346.

It is contended that the case of *Evans v. Commissioners, supra,* gives the Commissioners the right to say what are

the necessary expenses of the county, and the Courts have no power to review their decision. This case rests on *Broadnax v. Groom,* 64 N. C., 244, and neither of the cases sustains that contention. Where it is said the Court has no power to review their decision, the Court is speaking of the manner in which they perform or administer the rights given them by virtue of their office in cases where the expenditure is for necessary expenses. This is clearly stated by the Chief Justice in *Broadnax v. Groom,* that is, the Court has the right to say what are necessary expenses, but no right to say in what manner the Commissioners shall exercise their discretion in cases where they have the same.

The legality of the act is attacked because it names a number of persons who shall have the supervision of building the court-house, and gives them $2.00 per day. This may have been unnecessary and expensive, but it does not seem to take from the Commissioners any of their Constitutional rights. It is, in effect, making these seven men a building committee at the price of $2.00 per day, and if this was unnecessary and extravagant, it does not, in our opinion, render the act void. This disposes of the first question—the validity of the court-house bonds—and the injunction as to them was properly refused. The other question—the necessary expenses of the county—has to some extent been discussed in what we have already said. As is contended by the plaintiff in his complaint, many of the items set out by defendant in its resolution and statement of indebtedness, do not appear to be for necessary county expenses—such as notes due the bank, notes due Mrs. Featherstone, and due to the *Board of Education* and others for borrowed money. These do not appear to have been given for necessary expenses. And although the defendant says in its answer that it "can prove by an abundance of evidence that they were," this does not

make it so.   The allegation of the complaint that they were not, and the allegation of the answer that they were, raised an issue of fact which the Judge was not authorized to try.   The defendant, probably seeing this trouble in its case, contended that the Court would presume that the Commissioners acted properly, and that the notes were given for *necessary expenses* of the county, and cited *McCless v. Meekins,* 117 N. C., 34, as authority for this contention.   But that was where it was not denied but what that indebtedness was based upon the necessary expenses of the county; and this being so, the Court presumed that it was.   But where there is an allegation and denial as to whether they were or were not for necessary expenses, the Court can presume nothing.   And if the case had stood upon complaint and answer, we would not have held that there was error in not granting the injunction until the hearing, as to the indebtedness alleged to have been made for the *necessary expenses* of the county.   But plaintiff, in his replication, comes to the relief of the defendant. The defendant, in its answer, says that "all the money obtained on these notes and overdrafts was used in payment of necessary county expenses," and the plaintiff in his replication to the answer, when it was not necessary that he should reply, says that "It is true that the money received from the notes and overdrafts at the bank was used by the county for the purposes and in the manner therein alleged."   This admission, it seems to us,  defeats the plaintiff's right to an injunction in this action.   But as the matter of injunction turns upon an *admission of the plaintiff,* and is not a fact found by the jury upon proper instructions, we do not say what effect the judgment in this case would have in another action brought by other parties not connected with this case.

There is one thing presented by the record in this case that we feel called upon to mention, as it is a matter of much public concern.   We mention this as it appears in this case and

from the fact that matters of a similar character have appeared in other cases; and that is the $9,921.40 *due by note to the Board of Education for borrowed money.* This was set forth as one of the reasons in the motion to advance the cause for hearing. But if this had been the only reason set forth as a ground for the advancement, this case would not have been advanced. This money, it seems, had been collected and paid to the Board of Education, where it was subject to the proper use of the schools and where it should have remained. But the Board, in violation of its trust as public officers, have not kept it where it belonged, but have loaned it to the County Commissioners, who admit they are not able to repay it without the aid of special legislation for that purpose. As they have violated their trust in lending this money, they are liable for the same in a civil action, if not to criminal prosecution. It seems to us that there is too great a disposition on the part of public officers, entrusted with public funds, to think of them and treat them as their own. This should be, and will be, stopped, as we will not doubt that Courts and Solicitors will do their duty. Fifty-nine thousand dollars "floating debt for necessary expenses" over and above the large amount of taxes annually levied and collected in Buncombe County, seems to be large. But that is a matter with which we have nothing to do. If it is too large, if the affairs of the county have not been well and economically managed, that is a matter for the people of the county.

For the reasons given, the judgment of the Court below is Affirmed.