## F. M. GLENN ET AL. v. BOARD OF COUNTY COMMISSIONERS OF DURHAM COUNTY ET AL.

(Filed 2 July, 1931.)

1. **Taxation A b—County may not levy taxes in excess of fifteen cents on the hundred-dollar valuation for general fund.**

    Within the limitations of our Constitution, Article V, section 6, providing that the total State and county tax on property shall not exceed fifteen cents on the one hundred-dollar valuation, the county commissioners of the respective counties may levy a tax for necessary expenses without a vote of the people or special legislative authority.

2. **Taxation A a—County may levy tax for special, necessary expense with special approval of General Assembly without vote of people.**

    Taxes levied for a special purpose by a county with special legislative approval and for necessary county expenses are valid without a vote of the people.

3. **Same—Where tax is not for necessary expenses, approval of voters is necessary whether for special purpose or not.**

For purposes other than necessary expenses, whether special or not, taxes may not be levied by a county either within or in excess of the limitation fixed by our Constitution, Article V, section 6, except by a vote of the people under special legislative authority. Article VII, section 7.

4. **Taxation A b—Where debt is created for general expense its funding is also for general expense and not for special purpose.**

The issuance of bonds by a county to refund a debt arising from a deficiency in the general fund for general county expenses may not be declared to be for a special purpose within the meaning of the Constitution, but where the original debt was incurred for a special purpose for a necessary expense its funding may be declared to be for a special, necessary expense because of its original character. Special purposes within the constitutional provisions discussed by STACY, C. J.

5. **Same—Ch. 81, Public Laws 1927, as amended by ch. 60, Public Laws 1931, does not provide for tax for general fund in excess of limitation.**

Our statute permitting a county to refund its indebtedness incurred prior to 1 July, 1931, provides that "nothing herein contained shall be construed as authorizing an unlimited tax for the payment of bonds not issued for a special purpose," and the statute is declaratory of the law as construed by our courts, and confines the refunding of debts to those not requiring a tax rate in excess of the constitutional limitation for general county expenses or those created for a special, necessary purpose with the special approval of the General Assembly.

6. **Same—General Assembly may not authorize tax for general fund in excess of the constitutional limitation.**

The General Assembly is without power to suspend the constitutional provision limiting the tax rate for general county expenses by declaring the issuance of bonds to refund debts incurred for general county expenses to be for a special purpose by reason of financial depression, and to the extent a statute attempts to violate the constitutional provision it is void.

7. **Statutes A e—Of two possible constructions of a statute the courts will adopt that one which is constitutional.**

Where an act of the General Assembly is susceptible of two interpretations, one constitutional and the other not, the courts will adopt that interpretation which would be constitutional and reject the other, the presumption being in favor of the validity of the act.

8. **Taxation A b—Ch. 60, Public Laws 1931, authorizes funding of debts incurred for special, necessary expenses or within limitation.**

Where a statute authorizes the issuance of bonds by a county for funding indebtedness now outstanding or incurred before 1 July, 1931, and declares that taxation for the payment of such funding bonds shall constitute a special purpose, it will be interpreted in the light of the Constitution, and it authorizes the funding of debts incurred for purposes properly denominated special which are also necessary expenses of the county, but it does not authorize the funding of debts incurred to meet a de-

ficiency in the general county fund when it would be necessary to exceed the constitutional limitation on the tax rate for their payment. Article V, section 6.

**9. Same—Whether tax is for general or special purpose is for determination of courts.**

Whether a tax levy authorized by statute is for a special purpose is a question including both law and fact, and is for judicial and not for legislative determination.

ADAMS, J., concurring.

APPEAL by defendant from *Frizzelle, J.,* at Chambers, Durham, N. C., 11 June, 1931. From DURHAM.

Controversy without action submitted on an agreed statement of facts.

The plaintiff, a resident taxpayer of Durham County, sues on behalf of himself and all others similarly situated who may wish to make themselves parties, to test the right or to enjoin the defendants from issuing, on 1 July, 1931, certain funding bonds of Durham County in the amount of $65,000 "for the purpose of funding, redeeming and paying a like amount of indebtedness created by said county for its current necessary expenses, without enumeration of any particular purpose for which such indebtedness was created, the same being evidenced by tax anticipation notes of said county now outstanding, and to cause such bonds to recite on their face that they and the interest thereon are payable from an unlimited ad valorem tax upon all taxable property of said county. . . . That all of the notes hereinabove mentioned were issued in anticipation of the collection of the taxes and other revenue for the fiscal year ending 30 June, 1931, $50,000 of the proceeds thereof having been paid into the county operating expense fund and expended for such necessary current operating expenses, and $15,000 of such proceeds having been used for the payment of $15,000 revenue anticipation notes issued for necessary current operating expenses in the preceding fiscal year."

The defendants are proceeding under "The County Finance Act," ch. 81, Public Laws 1927, as amended by the "Local Government Act," ch. 60, Public Laws 1931, and they contend that the issuance of the bonds in question for funding the county "indebtedness now outstanding or incurred before 1 July, 1931," and the recital in said bonds to the effect "that the tax for their payment is unlimited" are authorized by said statutes, particularly section 41 of the former as amended by section 60 of the latter.

It is agreed that if, under these statutes, an unlimited tax may be levied to pay the interest on said bonds and the principal when due, everything necessary to bring this about has been done, *i. e.,* all the requirements of the law have been observed on the part of the defendants.

It further appears that "Durham County levied in the fiscal year ending 30 June, 1931, and also in the fiscal year ending 30 June, 1930, a tax of fifteen cents on the one hundred dollars of taxable property for said fund known as County Operating Expense Fund, which fund is for its necessary current operating expenses, but has been unable to collect sufficient taxes and other revenue for the payment of all of its necessary current operating expenses or for the payment of any of said notes."

On the facts agreed the trial court enjoined and restrained the defendants from inserting in the advertisement of sale any statement that said bonds and the interest thereon will be payable "from an unlimited tax upon all the taxable property in said county, or that the face of said bonds will so recite."

From this ruling and order the defendants appeal, assigning error.

*Victor S. Bryant for plaintiffs.*
*R. P. Reade for defendants, and Chester B. Masslich of counsel.*
*John W. Hinsdale amicus curiæ.*

STACY, C. J., after stating the case: The essence of what the defendants propose to do, and the ultimate effect of their proposal is, to issue bonds of Durham County to meet a deficiency of $65,000 in the county operating expense fund, which deficiency, without enumerating the several items composing it, was occasioned by the inability of the county authorities to collect or to realize sufficient taxes out of the maximum constitutional levy for said fund. The remedy suggested in *French v. Commissioners,* 74 N. C., 692, to meet such a situation (elaborated in later cases) is, either to reduce expenditures, if the taxes cannot be collected, or, if the tax for any of the items going to make up the general levy be required "for a special purpose," which is also a necessary expense of the county, to apply to the Legislature for its special approval to add an increased levy for such special purpose. *Mayo v. Commissioners,* 196 N. C., 15; *Owens v. Wake County,* 195 N. C., 132; *Commissioners v. Assell,* 194 N. C., 412 (on rehearing, 195 N. C., 719); *R. R. v. Reid,* 187 N. C., 320; *R. R. v. Commissioners,* 178 N. C., 449; *Davis v. Lenoir,* 178 N. C., 668.

The defendants contend that this latter course has been pursued in the instant case, while a contrary view is taken by the plaintiff.

Special approval of the General Assembly is given in section 8 of "The County Finance Act" to the issuance of county bonds and notes for certain purposes designated therein as special. And in section 41 of the same act it is provided that the full faith and credit of the county shall be deemed to be pledged for the punctual payment of the

bonds and notes issued thereunder, including bonds for which special funds are provided, etc. This section was amended by section 60 of the Local Government Act by adding at the end thereof the following:

" 'Nothing in this section shall be construed as authorizing an unlimited tax for the payment of bonds not issued ·for a special purpose within the meaning of section six of article five of the Constitution of North Carolina. It is the intention of this act, however, to authorize the issuance of funding and refunding bonds and notes as herein provided in cases where taxes for their payment is limited by the Constitution, as well as in other cases. The General Assembly hereby declares that an emergency exists by reason of the present extraordinary financial condition of the counties of this State, and hereby gives its special approval to the levying of taxes to the fullest extent permitted by the Constitution for the purpose of paying bonds and notes issued hereunder to fund or refund or renew indebtedness now outstanding or incurred before July first, nineteen hundred and thirty-one, and hereby declares that the payment of such bonds and notes constitutes a special purpose.' "

The pertinent constitutional provisions on the subject are as follows:

Article V, section 6: "The total of the State and county tax on property shall not exceed fifteen cents on the one hundred dollars value of property, except when the county property tax is levied for a special purpose and with the special approval of the General Assembly, which may be done by special or general act: *Provided,* this limitation shall not apply to taxes levied for the maintenance of public schools of the State for the term required by article nine, section three, of the Constitution: *Provided further,* the State tax shall not exceed five cents on the one hundred dollars value of property."

Article VII, section 7: "No county, city, town, or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."

It is established by the authoritative decisions interpreting these sections of the Constitution:

1. That within the limitations fixed in Article V, section 6, the county commissioners of the several counties may levy taxes for the necessary expenses of the county without a vote of the people or special legislative approval. *Henderson v. Wilmington,* 191 N. C., 269; *Commissioners v. Commissioners,* 165 N. C., 632; *Guire v. Commissioners,* 177 N. C., 516; *Hargrave v. Commissioners,* 168 N. C., 626; *Black v. Commis-*

*sioners,* 129 N. C., 121; *Herring v. Dixon,* 122 N. C., 420; *Vaughn v. Commissioners,* 117 N. C., 429; *Long v. Commissioners,* 76 N. C., 273.

"Taxation for State and county purposes combined cannot exceed the constitutional limitation for their necessary expenses and new debts. . . . If what are often miscalled the 'necessary expenses' of a county exceed the limitation prescribed by law, the necessity cannot justify the violation of the Constitution." *French v. Commissioners,* 74 N. C., 692.

2. That for special purposes and with the special approval of the General Assembly, the county commissioners of the several counties may exceed the limitations in Article V, section 6, without a vote of the people; provided the special purposes so approved by the General Assembly are for the necessary expenses of the county. *R. R. v. Lenoir County,* 200 N. C., 494; *R. R. v. Cherokee County,* 195 N. C., 756; *R. R. v. Forbes,* 188 N. C., 151; *R. R. v. McArtan,* 185 N. C., 201; *Parvin v. Commissioners,* 177 N. C., 508; *Pritchard v. Commissioners,* 160 N. C., 477; *Smathers v. Commissioners,* 125 N. C., 480 (defendant's appeal, 487); *Tucker v. Raleigh,* 75 N. C., 267; *Brodnax v. Groom,* 64 N. C., 244.

Speaking to the subject in *McCless v. Meekins,* 117 N. C., 35, *Montgomery, J.,* delivering the opinion of the Court, says: "We have already said that the commissioners would have no right to issue bonds without a popular vote unless for necessary expenses. Neither would the Legislature have the power to authorize them to do so. It seems from the perusal of the act that power was intended to be given to the commissioners to issue bonds for any and all indebtedness of the county, whether incurred for necessary expenses or not. This power will not be conferred by the legislative power, for such an attempt would be directly in conflict with Article VII, section 7, of the Constitution. But we see no reason why the commissioners should not be allowed, under the act, to fund the county debt and issue bonds for that part of same which was contracted for necessary expenses, without a popular vote, even if they had not the power given to them expressly under the Constitution and other laws than the act of 1889. An act of the Legislature can be constitutional in part and in part unconstitutional. *McCubbins v. Barringer,* 61 N. C., 554; *Johnson v. Winslow,* 63 N. C., 552."

"Such 'special purposes' must be of the ordinary purposes of the county, such as that to build a courthouse, a public jail, or an important bridge, as to which it may be deemed necessary to create a special fund"—*Merrimon, C. J.,* in *Jones v. Commissioners,* 107 N. C., p. 264.

3. That for purposes other than necessary expenses, whether special or other, taxes may not be levied by the commissioners of any county,

either within or in excess of the limitations fixed by Article V, section 6, except by a vote of the people under special legislative authority. *Briggs v. Raleigh,* 195 N. C., 223; *Jones v. New Bern,* 184 N. C., 131; *Herring v. Dixon, supra; Moose v. Commissioners,* 172 N. C., 419; *R. R. v. Commissioners,* 148 N. C., 220.

4. That a tax "to supplement the general county fund" *(R. R. v. Reid,* 187 N. C., 320), or "to provide for any deficiency in the necessary expenses and revenue of said respective counties" *(R. R. v. Commissioners,* 178 N. C., 449), or "for the purpose of taking up a note in bank made by the predecessor board and other current expenses" *(R. R. v. Cherokee County,* 177 N. C., 86), or to meet "the other current expenses of said county in said years" *(Williams v. Commissioners,* 119 N. C., 520), or "to borrow money for the necessary expenses of the county and provide for its payment" *(Bennett v. Commissioners,* 173 N. C., 625), is not for a special purpose within the meaning of the Constitution.

When a debt is originally created for a purpose properly denominated special, which is also a necessary expense of the county, its funding or refunding may be declared a special purpose because of its initial character *(Barbour v. Wake County,* 197 N. C., 314), but when the debt arises from a deficiency in the general county fund, its funding or refunding would not be "for a special purpose" in the constitutional sense. Its creation comes from a deficiency in the general fund, and nothing else appearing, its funding would be to make up that deficiency. To say that the funding of tax-anticipation notes, given for money borrowed to meet the general expenses of the county, or to supplement the general county fund, may itself be declared a special purpose would be to convert a note given for one purpose into another and special one by the simple expedient of renewing it and changing its name. When a note is given for one purpose, ostensibly its renewal would be for the same purpose. This is the rationale of the decisions on the subject.

Nor does it appear that the Legislature had any different object in view. It says: "Nothing in this section shall be construed as authorizing an unlimited tax for the payment of bonds not issued for a special purpose." The statute provides that funding and refunding bonds may be issued where taxes for their payment are limited by the Constitution, as well as in other cases. But this is only declaratory of the law as heretofore announced in a number of cases, notably *Bennett v. Commissioners, supra,* where *Hoke, J.,* speaking for a unanimous Court, says: "True, we have held in this jurisdiction that when county commissioners have power to contract a debt or to provide for valid debts already contracted, they may, in the exercise of good business prudence, issue county bonds in evidence of the obligation, the right of taxation,

therefore, being restricted to the constitutional limitations as to debts incurred since the same was adopted. *Commissioners v. Webb,* 148 N. C., 120; *McCless v. Meekins,* 117 N. C., 34; *French v. Commissioners,* 74 N. C., 692; *Johnston v. Commissioners,* 67 N. C., 103."

The General Assembly further declares that an emergency exists by reason of the present extraordinary financial condition prevailing in the counties of the State and gives its special approval for the levying of taxes "to the fullest extent permitted by the Constitution" for the purpose of paying bonds and notes issued to fund or refund or renew indebtedness of the counties now outstanding or incurred before 1 July, 1931, and declares that the payment of such bonds and notes shall constitute a special purpose. But this does not purport to convert notes issued for a deficiency in the general county fund into notes for special purposes. If it does, then to this extent the act runs counter to the organic law, for the Legislature is without power to suspend the Constitution even in times of stress. *Dixon v. Commissioners,* 200 N. C., 215. To hold otherwise would be to permit by indirection that which is prohibited from direct accomplishment. The Constitution is the protector of all the people. It stands as their shield and buckler in fair weather and foul; and in periods of panic and depression, it is to them "as the shadow of a great rock in a weary land, a shelter in the time of storm." The observations of *Reade, J.,* in *R. R. v. Holden,* 63 N. C., 410, at p. 418, which were pressed on the argument, are not at variance with this position, but are accordant herewith. When an act of the Legislature is susceptible to two interpretations, one constitutional and the other not, the courts will adopt the former and reject the latter, as the presumption is in favor of its validity. *Green v. Asheville,* 199 N. C., 516, 154 S. E., 852; *Hammond v. McRae,* 182 N. C., 747, 110 S. E., 102; *Person v. Doughton,* 186 N. C., 723, 120 S. E., 481.

It is true, the act provides for funding "indebtedness now outstanding or incurred before 1 July, 1931," and declares that the payment of such funding bonds and notes shall constitute a special purpose. Interpreted in the light of the Constitution, this means that debts created in prosecuting purposes properly denominated special, which are also necessary expenses of the county, may be funded and taxes levied to pay said funding bonds as "for a special purpose," while those levied to pay the bonds issued to meet a deficiency in the general county fund, would fall within the limitations of Article V, section 6. *Bennett v. Commissioners, supra; McCless v. Meekins, supra.*

The cases of *Wolfe v. Mt. Airy,* 197 N. C., 450, *Hartsfield v. Craven County,* 194 N. C., 358, *Jones v. Commissioners,* 137 N. C., 579, *Edwards v. Commissioners,* 70 N. C., 571, and *Sedberry v. Commissioners,* 66 N. C., 486, the last three cited and relied upon by defend-

ants, are not at variance with anything said herein, nor do they announce a contrary view. In these cases the right to fund certain valid obligations was upheld, but the question of the limitation of the tax as fixed by the Constitution was not involved. So in the instant case the right of the authorities to fund the present indebtedness is not mooted. This is conceded. The point is: May an unlimited tax be pledged and levied for the payment of said funding bonds? We think not. *Pritchard v. Commissioners,* 160 N. C., 476.

As a "special purpose" for which an unlimited tax may be levied with the special approval of the General Assembly and without a vote of the people must also be a "necessary expense" of the county, which latter includes both law and fact, and, as used in the Constitution and municipal resolutions, is a matter for judicial, rather than legislative, determination *(Henderson v. Wilmington, supra),* it follows that what constitutes a special purpose within the meaning of the Constitution, must ultimately be decided by the courts. *Storm v. Wrightsville Beach,* 189 N. C., 679; *Hightower v. Raleigh,* 150 N. C., 569; *Wharton v. Greensboro,* 146 N. C., 356; *Fawcett v. Mt. Airy,* 134 N. C., 125; *Black v. Commissioners,* 129 N. C., 121; *Long v. Commissioners,* 76 N. C., 273.

The expressions "current necessary expenses" and "necessary current operating expenses," used in the agreed statement of facts, were doubtless induced by similar expressions in some of our opinions, notably *Black v. Commissioners, supra,* where "current necessary expenses of the county" and "floating indebtedness of the county" were used by the writer of the opinion; but these expressions are neither determinative of the legal question now presented, nor do they furnish a cue to its solution.

We think the instant case falls within the principles stated in the fourth paragraph above, to the effect that, in substance, the effort is to supplement the general county fund, or to provide for a deficiency therein, or to take up a note in bank and other current expenses, or to borrow money for the necessary expenses of the county and provide for its repayment, which we have said was not "for a special purpose" within the meaning of Article V, section 6, of the Constitution. The judgment is accordingly

Affirmed.

ADAMS, J., concurring: The law as I understand it is correctly stated in the opinion delivered by the *Chief Justice,* and for this reason I should perhaps make reference to a paragraph in the appellants' brief. It is there said that the decision in *R. R. v. Reid,* 187 N. C., 320, is authority for the position that a tax for the "ordinary expenses" of a county may be a tax for a "special purpose." The pertinent part of the

opinion in that case is in these words: "Now, if we apply the statement of *Chief Justice Marshall,* that 'every opinion, to be correctly understood, ought to be considered with a view to the case in which it was delivered' *(U. S. v. Burr,* 25 Fed. Cases, p. 165), we must conclude that, although a tax 'to supplement the general county fund' is not a tax for special purpose, neither of the decisions cited by the plaintiff sustains the contention that the maintenance of the county home or the building and repair of bridges is not such special purpose as comes within the purview of the sixth section of Article V. On the contrary, while the construction and maintenance of the county home and the building and repairing of bridges may be considered a part of the ordinary expenses of the county, to be defrayed out of the general county revenue when sufficient for these purposes, still a tax levied under a special or general act for the specific and exclusive purpose of constructing, maintaining or repairing courthouses, jails, county homes, highways, or bridges is deemed to be levied for a special purpose. Therefore, if the tax of 3 cents was levied to provide for constructing, repairing or maintaining bridges or the county home, the purpose was special."

This language, it seems to me, is not susceptible of the appellants' liberal construction. The meaning is this: If a county had sufficient money or "revenue" on hand to construct or maintain a county home, or to build or repair a bridge, the cost may be paid out of such money or "revenue" just as the ordinary expenses of the county are paid *(Adams v. Durham,* 189 N. C., 232); and a tax levied by a county for the specific and exclusive purpose of constructing, maintaining or repairing courthouses, jails, county homes, highways or bridges is deemed to be levied for a special purpose, these purposes and others of like character involving "necessary expenses" within the meaning of Article VII, section 7, of the Constitution. *Herring v. Dixon,* 122 N. C., 420; *Jones v. Commissioners,* 137 N. C., 579, 598; *Crocker v. Moore,* 140 N. C., 432; *Hendersonville v. Jordan,* 150 N. C., 35; *Commissioners v. Road Commissioners,* 165 N. C., 632; *Keith v. Lockhart,* 171 N. C., 451; *Moose v. Commissioners,* 172 N. C., 419; *Woodall v. Highway Commission,* 176 N. C., 377; *Parvin v. Commissioners,* 177 N. C., 508; *Ketchie v. Hedrick,* 186 N. C., 393; *Henderson v. Wilmington,* 191 N. C., 269.

The only way to preserve the vitality of Article V, section 6, and Article VII, section 7, of the Constitution is to adhere to the construction, as stated in the opinion of the Court, that the "special purpose" for which the "special approval" of the General Assembly is essential must be for a "necessary expense" in contemplation of the constitutional provision.