## SUMMERS v. BRICE.

1. Unrecorded Mortgage—Subsequent Purchaser for Value.—As against a prior unrecorded mortgage of land, a subsequent purchaser by deed (which was not recorded within time, but was recorded before the mortgage) has no superior rights if he had actual notice of such mortgage, nor unless he was a purchaser for valuable consideration; that is to say, unless he has parted with value at the time of his purchase, or subsequent thereto, and before notice received of the prior mortgage.

2. Note and Mortgage—Different Dates.—The Circuit Judge sustained in his finding of fact, that a mortgage dated February 20 was given to secure money lent that day, represented by a note dated February 6, there being testimony to support such finding. The mere difference in date of the two instruments does not prove that they were separate transactions.

3. Unrecorded Mortgage—Subsequent Purchaser for Value.—One who takes a deed of conveyance to land on the consideration of a past due debt owing to him by grantor, and on the further consideration of his agreement with grantor to pay debts for nearly all of which they are jointly liable, one of which is secured, but none paid before notice received by grantee of a prior unrecorded mortgage, is not a subsequent purchaser for valuable consideration as against such mortgage.

4. Ibid.—Ibid.—Equities.—A mortgagee who has parted with his money on the faith of the mortgage, has an equity superior to a subsequent grantee who has not paid a dollar on his purchase. ·

Before Hudson, J., Fairfield, June, 1891.

This was an action by J. W. Summers against Calvin Brice, to foreclose a mortgage given to plaintiff by John Vinson on February 20, 1889. This mortgage was not recorded until May 19, 1890, but defendant received notice of its existence through a letter mailed at Sherman, Texas, on January 10, 1890. The defendant claimed as a purchaser for valuable consideration without notice under deed from the same John Vinson, executed October 12, 1889, and recorded March 25, 1890. The consideration of this deed is stated in the opinion of this court. The Circuit decree, omitting the formal directions as to a sale, was as follows:

This is an action of foreclosure by J. W. Summers against Calvin Brice. This case was referred to a referee to take testimony

and report the same to this court. After argument by the counsel for plaintiff and defendant, I find as a matter of fact—

1. That on the 20th day of February, 1889, John Vinson executed and delivered to plaintiff Summers a mortgage on the tract of land described in the complaint in this action, to secure the payment of the sum of eight hundred dollars loaned John Vinson, by plaintiff on that day. Said mortgage was not recorded until the 19th day of May, 1890. That there is now due on said mortgage nine hundred and eighty-five and 10–100 dollars.

2. That on the 12th day of October, 1889, defendant, Calvin Brice, without notice of Summers's unrecorded mortgage, purchased this tract of land from John Vinson.

3. That the consideration for the conveyance of the 12th day of October, 1889, was debts due by John Vinson to Calvin Brice, and liabilities of the firm of Vinson & Co. assumed by Brice prior to the date of said conveyance.

4. That on the 10th day of January, 1890, the defendant Brice received express notice of plaintiff's mortgage.

5. That the consideration for said purchase is not such a valuable consideration as will entitle defendant to set up the want of registration as against plaintiff's unrecorded mortgage, as the defendant has neither at the time of, or subsequent to, said purchase parted with anything of value on the faith of said land, and is now in no worse position than before said purchase was made. *Williams* v. *Hollingsworth*, 1 Strob. Eq., 113; 1 Jones Mort., §§ 206, 458; 1 Story Eq. Jur., § 65; *Zorn* v. *R. R. Co.*, 5 S. C., 100.

*Mr. J. E. McDonald*, for appellant.

*Messrs. Hanahan & Cathcart*, contra.

April 20, 1892. The opinion of the court was delivered by

Mr. Justice Pope. John Vinson and Calvin Brice were partners in merchandise, for some time prior to the fall of 1887, at White Oak, in Fairfield County, in this State. In November, 1887, John Vinson surrendered the control of such business and removed with his family to Sherman, in the State of Texas. On

17th June, 1887, John Vinson sold his plantation, known as the "home place," to J. Y. Stewart at the price of $8,960, of which $2,000 was payable 1 November, 1887, and the balance in 1, 2, 3, and 4 years, with interest of 10 per cent. per annum, secured by bond and mortgage. Prior to 4 June, 1889, John Vinson assigned this bond and mortgage to Mrs. Laura McCants, to secure John Vinson & Co.'s note for $1,379.36, and at that date $2,000 was credited on the bond and mortgage. On 4 June, 1889, John Vinson, to secure his own note for $3,000, assigned said bond and mortgage to Mrs. J. P. Paisley. In the fall of 1888, the firm of John Vinson & Co. owed $8,000 above all firm assets, and was dissolved.

On the 6th of February, 1889, at Sherman, Texas, John Vinson gave his note to J. W. Summers, the plaintiff, for $800, and interest at 10 per cent., and on the 20 February, 1889, he executed a mortgage on what is known as the "Abell tract" of land situate in Fairfield County, in this State, to secure this note. On the 12th day of October, 1889, in consideration of an agreement in writing made with John Vinson by Calvin Brice, whereby the said Calvin Brice agreed to release John Vinson from all liability as a member of the firm of John Vinson & Co., of White Oak, S. C., also from a certain note due Mrs. Mary Brice, for $500, also a note due Calvin Brice, for ——— dollars, the whole aggregating the sum of $3,250, the said John Vinson assigned the bond and mortgage of J. Y. Stewart, subject to the previous assignments thereof to Mrs. McCants and Mrs. Paisley, to Calvin Brice, and also conveyed to him by deed, naming $1,000 as the consideration thereof, the "Abell tract" of land. *On the 10th day of January, 1890*, Calvin Brice received notice in writing from John Vinson of the mortgage of J. W. Summers on the "Abell tract of land." On the 25th day of March, 1890, Brice had his deed recorded, and is in possession of the "Abell tract" of land conveyed thereby. On the 19th May, 1890, the mortgage of J. W. Summers was recorded.

John Vinson having made default in the payment of his note and mortgage, J. W. Summers, as plaintiff, began his action against Calvin Brice as defendant in the Court of Common Pleas for Fairfield County for a foreclosure of the mortgage, alleging

that Calvin Brice was in possession of the land covered by the mortgage under his deed from Vinson, but that he had notice of plaintiff's mortgage thereon at and before the execution and de-livery of said title deeds. Calvin Brice answered that he purchased such lands from John Vinson, for a valuable consideration then paid said Vinson, and that at the time of the payment of such purchase money he had no notice, either express or implied, of the claim set up by Summers. Testimony was taken by special referee, and the action came on to be heard before his honor, Judge Hudson, at the June term, 1891, of the Court of Common Pleas for Fairfield County, on the pleadings and such testimony. The decree was rendered on the 13th June, 1891, wherein he adjudged that the plaintiff was entitled to a foreclosure of the mortgage and a sale of the land to pay the debt and interest of $985.10, and costs. From this decree the defendant appeals to this court on the following grounds:

1. For that his honor erred in holding and adjudging as a matter of fact, that the mortgage of the plaintiff was executed and delivered on the 20th day of February, 1889, to secure the payment of eight hundred dollars loaned to John Vinson on that day, when he should have held that said mortgage was executed to secure an antecedent debt, to wit, a note for eight hundred dollars, made and delivered on the 6th day of February, 1889.

2. For that his honor erred in holding and adjudging as a matter of fact, that the only consideration for the conveyance made by John Vinson to the defendant, Calvin Brice, was debts due by said John Vinson to said Calvin Brice, "and liabilities of the firm of Vinson & Co. assumed by Brice prior to the date of said conveyance."

3. For that his honor erred in holding and adjudging that the consideration for said purchase is not such a valuable considera-tion as will entitle defendant to set up the want of registration as against plaintiff's unrecorded mortgage, as the defendant has neither, at the time or subsequent to said purchase, parted with anything of value on the faith of said land, and is now in no worse position than before said purchase was made.

4. For that his honor erred in not holding, under the facts of this case, that plaintiff's mortgage was not a lien upon the land

at the time defendant purchased the same, he having neither actual nor constructive notice thereof; and that the defendant having paid a valuable consideration as between the parties to the deed, and being a subsequent purchaser without notice, was entitled to the protection afforded by section 1776 of the General Statutes.

5. For that his honor erred in not holding and adjudging that the defendant took said land under said conveyance free from any lien of plaintiff's mortgage, and that defendant was entitled in law to hold the same against plaintiff's unrecorded mortgage, as a subsequent purchaser for valuable consideration without notice, under section 1776 of the General Statutes.

6. For that his honor erred in not holding and adjudging, under the facts of this case, that the defendant was entitled in law and equity to hold said land as against plaintiff's unrecorded mortgage, as a *bona fide* purchaser for valuable consideration without notice.

7. For that his honor erred in not holding and adjudging that the equities of plaintiff and defendant being equal, the legal title of the defendant should prevail.

That the defendant, appellant, conceives that this contention is referable almost entirely to the principles of law pertaining to the provisions of section 1776 of the General Statutes of this State, is very apparent. This view does not strike us as quite broad enough, for while it is true that attention must be paid to that section, yet there are some equitable features in the transactions here to be considered outside and independent of that section. The mortgage of the plaintiff antedates the deed of the defendant. The defendant did not receive notice of plaintiff's mortgage through the registry laws of this State, for he got notice by the letter of his grantor on the 10th day of January, 1890, while such mortgage was not recorded prior to the 19th May, 1890, and defendant's deed was recorded on the 25 March, 1890. So far, therefore, as the requirements of the registry laws of this State were concerned, neither plaintiff nor defendant have complied with the same, so as to affect each other, for neither instrument having been recorded within the forty days that elapsed after the execution thereof, respectively, neither one could claim

*per se* any advantage over the other from such recording, and each one having been recorded more than forty days after the execution of the same, respectively, with previous notice of each one's rights, such record was only notice, by the express provisions of the section 1776, to *subsequent creditors and purchasers for valuable consideration without notice after the date of record.* The failure to record within the time required by law, by both plaintiff and defendant, seems to have been the result of carelessness and with no sinister motive. They occupy the same plane, therefore, so far as this fact goes.

But what are the principles that should govern in determining the rights of these litigants? Take the plaintiff's case. He had eight hundred dollars in cash; Mr. John Vinson desired to borrow its use. The minds of the two met when the loan was made, and the note and mortgage evidence that result. This transaction was entirely proper, for it was the lender's own money that Vinson received, and it was Vinson's own land that was pledged to secure the loan. All that was essential therefore for Summers, the plaintiff, to have done to have a lien on such land from the date of the mortgage, prior and preferred to any one else, was to have it recorded in the office of the register of mesne conveyance for Fairfield County within forty days after its execution.

It must be borne in mind that the Circuit Judge has found as a fact, that the note and mortgage held by plaintiff were created at the same time. This being his conclusion of fact, we shall not disturb it, as there is some testimony in the "Case" to support such a finding, and we cannot conclude that it is either against the overbearing weight of the testimony in the case, or without any testimony to sustain it. The bare fact that such instruments bear different dates is nothing serious, for it very often happens in business transactions, that because of the absence of witnesses or the necessity of going before an officer to prove the execution of the papers or some other reason, the note bears one date and the mortgage another, while, as a matter of fact, they are delivered on the same day. Hence we must begin our discussion with this fact clearly before our minds, that the proofs here made establish that the plaintiff

14—36

Summers, for a valuable consideration, moving from him in the loan of $800 in cash to John Vinson on the 20 February, 1889, on that same day obtained the mortgage of the "Abell tract of land." It must also be remembered that this, according to the proofs, is the only business or other connection subsisting between Summers, the plaintiff, and John Vinson, or between Summers and Brice.

Now let us take the same view of Vinson and Brice. They were brothers-in-law ; they had been partners in merchandise up to the fall of 1888. As such partners they had been unfortunate in the matter of business, for over and above the assets then on hand belonging to such mercantile partnership, they owed other people $8,000. So far as such creditors were concerned, each one of them was indebted for that whole amount. Amongst the debts they owed as a firm was a note for $1,800 to the bank at Winnsboro, and a note to Mrs. Laura McCants for more than $1,300, and besides Vinson owed Brice as an individual some $2,500. According to the views we entertain, in our consideration of this case, we are confined to the transactions between these three parties, Summers, Vinson, Brice, closing on the 10th day of January, 1890. Such being the case, how must we view their rights ?

The sole value of recording is to give notice. If notice is given in any other way than by recording, it will prevent the consequences provided by section 1776 of our Statutes arising from a failure to record. So, therefore, when Calvin Brice, with a full knowledge for more than two months of Summers's mortgage, placed his deed on record on the 25 March, 1890, there was no virtue in that act *per se* to defeat the mortgage of Summers. Hence, as we before remarked, the registry act (section 1776) does not contain the law by which this contest must be determined. The cases cited do not fit the case at bar ; there is an essential difference as to the facts on which *King* v. *Fraser*, 23 S. C., 570, and the other cases relied upon, were decided, and the facts of this case. The principle of equity that governs this case is that laid down by Chancellor Walworth in *Deckerson* v. *Tillinghast*, 4 Paige, 215, which was approved by this court in *Zorn* v. *Railroad Company*, 5 S. C., 100. It is this, that

when a mortgagee of an unrecorded mortgage allows one to purchase for a valuable consideration without notice of such unrecorded mortgage, and to receive a title deed for the land covered by such unrecorded mortgage, *if such purchaser and grantee has paid such purchase money and received his title to said land, before any notice of the mortgagee's rights therein,* such mortgagee loses all his rights. It is admitted that as to any and every other person the fact of recording this deed on 25 March, 1890, although executed more than forty days prior thereto, was notice from the date of record, but not as to Summers, for Brice had notice of his mortgage at that time.

Hence the pertinency of the remarks in the decree of the Circuit Judge when he says: "That the consideration for said purchase is not such a valuable consideration as will entitle defendant to set up the want of registration as against plaintiff's unrecorded mortgage, *as the defendant has neither at the time of, nor subsequent to, said purchase parted with anything of value on the faith of said land, and is now in no worse position than before said purchase was made.*" Do the facts set out in the "Case" sustain the Circuit Judge? Unquestionably they do. The defendant himself in his testimony admits that Vinson's indebtedness by note to him was in part the consideration of the deed. *That note is still in Brice's possession.* He said the note for $500, due by Vinson to Mrs. Margaret Brice, was to be paid by him as part of such consideration. *That note is still unpaid.* He said the indebtedness of the store was to be paid in part consideration of such deed. Of $8,000 there, only $2,600 has been paid—$1,800 to Winnsboro bank and $800 to Mrs. McCants; but let it be remembered that the $800 paid to Mrs. McCants was a firm debt, and was secured by the first lien on $6,840, secured by the bond and mortgage of Stewart, and by this payment Brice is remitted to all the equities of Mrs. McCants in that bond and mortgage. And besides, this $800 paid to Mrs. McCants was many months after notice of Summers's mortgage. So that the $1,800 paid to the bank (which was paid 18 December, 1889), is the only payment made by Brice. We must remember this was a firm debt, of which

he owed one-half, and so far as the bank was concerned, was personally responsible for the whole debt.

Does not the defendant himself (to his credit, it must be said), testify that he did "not pay Vinson a dollar in actual money for the land ; *it was simply a settlement of old accounts, debts between Vinson and witness."* "Witness would have taken anything that he could have got from Vinson." " *Witness is not in any worse position from the transaction with Vinson,* and if he saves the Abell land will be benefited to that extent." Gray Boulware, one of the defendant's witnesses, testified that "Vinson said that he left the Abell land to pay any debts that he was responsible for." Undoubtedly the rules of equity governing this class of cases require that the purchase money be paid, or certainly something of the equivalent of money as the purchasing consideration must be paid or parted with, before the notice of the unrecorded mortgage is received. *Snelgrove* v. *Snelgrove,* 4 DeSaus., 274 ; *Dillard and Kirby* ads. *Crocker,* Speer Eq., 20 ; *Zorn* v. *Railroad Company,* 5 S. C., 100. We must therefore overrule the first, third, fourth, fifth, and sixth grounds of appeal.

As to the second ground of appeal, it seems to us that the appellant has misconceived the judge's meaning. There was no testimony offered going to show that Brice had ever assumed to discharge for Vinson his liabilities as a member of the firm of Vinson & Co. before 12 October, 1889. What the judge meant to say (and his remark is susceptible of that meaning), was that by the very act of uniting himself to Vinson as a partner, years before 12 October, 1889, Brice assumed to pay, so far as the creditors were concerned, any debts of such firm, and hence assumed to pay Vinson's liabilities. We must overrule this ground of appeal also.

Lastly, as to the seventh ground of appeal as to the equality of the equities. We cannot see this. Surely it will not be seriously contended that a holder of a mortgage upon which he has paid every dollar called for by the security, has not an equity superior to that of a subsequent purchaser without notice, who has not parted with a dollar? This ground of appeal is also dismissed.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.