TOWN OF KENILWORTH ET AL. v. SOLON HYDER, TAX COLLECTOR FOR BUNCOMBE COUNTY.

(Filed 17 April, 1929.)

1. **Drainage Districts A a—Statutes creating drainage district construed in pari materia.**

   Where proceedings for the establishing of a special taxing drainage district are referred to in a later statute and confirmed therein with an additional provision establishing its boundaries, the two being interrelated, are to be construed together by the courts when the constitutionality of the district is questioned.

2. **Same—Notice to or consent of those included in district not necessary.**

   Where an incorporated town having a sewerage system is included in a special drainage district later established by statute giving defined boundaries overlapping those of the town, it is not required that those owning land within the lappage should be notified or give their consent to be also included within the boundaries of the special district.

3. **Drainage Districts A b—Boundaries of district need not coincide with political subdivisions.**

   The General Assembly of North Carolina has the power to create drainage districts without regard to the boundaries of the other political subdivisions of the State, such as county or municipal boundaries and the like.

4. **Same—Provision that town owning sewerage system cannot be made a part of district without consent relates to sewerage system and not to boundaries.**

   Where a statute creating a special drainage district includes in its expressed boundaries an incorporated town already having a drainage

system, a proviso therein that no person, firm or corporation owning any water system shall be compelled to become a part of such sanitary district unless satisfactory, etc.: *Held*, the word "district" used in the proviso means "district system" and not the boundaries of the area, and does not operate to relieve those living in such section from the drainage assessments.

5. **Drainage Districts B a—Notice and an opportunity to be heard not necessary to validity of special taxes for district.**

A statute which authorizes the laying off of a drainage district with power given the trustees provided therein to lay an *ad valorem* tax for its construction and maintenance is not unconstitutional for failing to provide that notice be given the owners of land situate therein that the lands will be included within the area or of the amount of the taxes to be levied or the specific purpose therefor.

6. **Same—Special tax for drainage district does not require submission to voters nor is its creation private act.**

A statute creating and designating the boundaries of a drainage district and providing taxation for its construction and maintenance is for a necessary purpose and does not fall within the purview of the State Constitution, Art. VII, sec. 7, requiring its submission to the voters within the district, nor is it a local, private or special act relating to health or sanitation inhibited by our Constitution, Art II, sec. 29.

7. **Same—Assessing special drainage tax not an exercise of Eminent Domain—Due Process Clause.**

The creation by statute of a special drainage district with the power to levy an *ad valorem* tax therein for its construction and maintenance is not a taking of property within the purview of our Constitution, Art. I, sec. 17, and does not fall within the intent and meaning of the due process clause, Federal Constitution, Art. XIV, sec. 1. The distinction between taxation of this character and assessments pointed out by ADAMS, J.

8. **Same—Double taxation not grounds for attacking drainage assessments.**

Where some of the citizens of an incorporated town having a sewerage system therein have their property also included in a special taxing drainage district defined and created by statute, the constitutionality of the later act may not be successfully questioned on the grounds either of double taxation or a taxation without benefit received.

APPEAL by plaintiffs from *Schenck, J.,* at February Term, 1929, of BUNCOMBE. Affirmed.

This is an action to restrain the defendant from collecting an *ad valorem* tax said to have been levied in the Swannanoa Water and Sewer District. At the session of 1923 the General Assembly passed an act to create sanitary districts in Buncombe County and authorized the county commissioners to create such districts upon petition of the voters residing in the proposed districts. Public-Local Laws 1923, ch. 341. This act was ratified 1 March, 1923, and under it the board of com-

missioners established sanitary districts, one of which was the Swannanoa Sanitary Sewer District. In 1927 the General Assembly ratified and approved the incorporation of the last named district and changed its name to the Swannanoa Water and Sewer District. The boundaries of the district are prescribed and the machinery for its operation is fully set forth in the act.

In their complaint the plaintiffs allege that the town of Kenilworth is a municipal corporation and that the other plaintiffs are residents of the town and owners of property therein which is subject to an *ad valorem* tax; that the town has miles of paved streets, modern conveniences including a complete water and sewer system, and property valued at almost four million dollars; that the defendant has demanded of the plaintiffs the payment of a tax of fifty-four cents on property valued at $100; that the system of the Swannanoa Water and Sewer District is not connected·with the town system and is of no benefit to the town; that the plaintiffs have never consented to become a part of the Swannanoa District; and that the act of 1927, *supra,* was enacted in breach of the Fourteenth Amendment to the Constitution of the United States and section 17 of the Bill of Rights, and of Article VII, section 7, and Article II, section 29, of the Constitution of North Carolina.

The defendant demurred to the complaint on the following grounds: (a) Said complaint fails to state that the territory of the plaintiff, the town of Kenilworth, and the lands of the other plaintiffs, are situated outside of the boundaries of the Swannanoa Water and Sewer District, as the same is confirmed, created, and delimited by the terms and provisions of the statute pleaded in the 9th and 12th paragraphs of said complaint, namely, chapter 249, Public-Local Laws 1927, aforementioned; (b) because said complaint fails to allege that the tax levy which the plaintiffs resist and seek to invalidate in this action is made for any other purpose than to pay the principal and interest of bonds issued and caused to be issued and sold by said Swannanoa Water and Sewer District and/or by the county commissioners of Buncombe County for the purpose defined by the aforesaid Public-Local Law, or that said levy exceeds the rate and amount necessary for said purpose; and generally (c) because said complaint fails to state any cause of action, either legal or equitable, which would or might entitle the plaintiffs to the relief demanded in said complaint."

The demurrer was sustained and the action dismissed. The plaintiff excepted and appealed for error assigned.

*J. W. Pless for plaintiffs.*

*Frank Carter, Edwin S. Hartshorn, Thos. S. Rollins and S. W. Brown for defendant.*

ADAMS, J.   The plaintiffs allege that the tax complained of was levied under Public-Local Laws 1927, ch. 249, and upon this allegation they base the contention that in determining the controversy we are restricted to a consideration of this act—a contention, however, in which we do not concur. They assail the whole chapter as unconstitutional, but allege that if it is valid they are not within its purview. Their allegations in effect make the act a part of the complaint and call for an examination of all its relevant provisions.

The first and second sections authorize, ratify, approve, and confirm all the proceedings taken by the board of commissioners of Buncombe County creating the Swannanoa Sanitary Sewer District under chapter 341, Public-Local Laws 1923, declare the district to be a municipal corporation with perpetual existence, and change its name to that of the "Swannanoa Water and Sewer District." If the board of county commissioners derived its power from the act of 1923, we must refer to this act to ascertain whether the board transgressed its delegated powers and whether the proceedings which the act of 1927 purports to have ratified were effective or invalid. The two acts were enacted for a common purpose and are essentially interrelated.

Before going to the demurrer we advert to the grounds on which the plaintiffs criticize the act of 1927. Pursuant to a rule of practice in this Court (R. 27½) the appellants in their brief submit the following as the questions involved in the appeal: (1) Whether the provisos in section 11 of the act of 1927 exclude the plaintiffs from the operation of the act until they consent to become a part of the sanitary district; (2) whether the act of 1927 is in conflict with the Constitution, Article II, section 29, or (3) with Article VII, section 7; (4) whether it violates the seventeenth section of the Declaration of Rights or the due process clause of the Fourteenth Amendment to the Federal Constitution. If these questions, which are the only ones proposed, are resolved against the appellants, the specific grounds of the demurrer will demand only brief consideration.

In view of some recent decisions by this Court it may be expedient first to dispose of the second and third questions. The act of 1923 authorized the county commissioners to create sanitary districts in Buncombe County and to appoint for each district three trustees who were to exercise certain legislative powers: to build a system of sewerage and sewer pipes, to purchase or condemn land, and to issue negotiable coupon bonds of the district. Upon its creation each sanitary district was made a municipal corporation, and the county commissioners were authorized annually to levy a special tax upon all the taxable property within the district sufficient to pay the interest as it accrues and to create a sinking fund for the payment of the principal at maturity.

Section 10 of the act of 1927 authorizes the commissioners annually to levy a special tax of "sufficient rate and amount to pay the principal and interest of any bonds authorized by this act as the same become due, the tax to be levied against all the taxable property within said district"; also to levy a special tax sufficient in rate and amount for the proper maintenance, extension, supervision, and control of the authorized improvements. It may be seen that in their salient features the two acts are strikingly similar—the chief divergence of the latter being a description of the district by metes and bounds which could not be set forth in the former, the provision for taking over any other water or sewerage system with the provisos which the appellants invoke, and a direction that on completion of the work the trustees surrender to the county all property belonging to the district.

The following sections are the basis of the second and third questions: "No county, city, town or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by an officer of the same except for the necessary expenses thereof unless by a vote of the majority of the qualified voters therein." Constitution, Art. VII, sec. 7.

"The General Assembly shall not pass any local, private, or special act or resolution . . . relating to health, sanitation, and the abatement of nuisances." Constitution, Art. II, sec. 29.

In *Reed v. Engineering Co.*, 188 N. C., 39, it was held that the act of 1893 is not antagonistic to either of these constitutional inhibitions; that a water and sewerage system involves a necessary expense and that the act is not a local, private, or special act relating to health or sanitation. As already indicated the two legislative acts are correlative; they were enacted to achieve a single result; and the divergence between them is so slight that we see no convincing reason for holding that *Reed's case* is not equally applicable to the later act. See *Kornegay v. Goldsboro*, 180 N. C., 441; *Coble v. Comrs.*, 184 N. C., 342; *Harrington v. Comrs.*, 189 N. C., 572, 576. Compare *Armstrong v. Comrs.*, 185 N. C., 405; *Day v. Comrs.*, 191 N. C., 780; *Sanitary District v. Prudden*, 195 N. C., 722.

We turn now to the fourth question. "No person ought to be . . . disseized of his freehold, liberties, or privileges . . . or in any manner deprived of his life, liberty, or property, but by the law of the land." Constitution, Art. I, sec. 17. "Nor shall any state deprive any person of life, liberty, or property, without due process of law." Constitution of United States, Art. XIV, sec. 1.

Does the act of 1927 violate these provisions? The appellants say that they had no notice of the proposed boundaries before the district was formed and that they have not been benefited in any way by its creation.

It may first be noted that this act does not levy special taxes or assessments upon abutting property for special benefits conferred by a public improvement. "Assessments as distinguished from other kinds of taxation are those special and local impositions upon the property in the immediate vicinity of municipal improvements which are necessary to pay for the improvement, and are laid with reference to the special benefit which the property is supposed to have derived therefrom. Provisions relating to taxation generally are uniformly held not applicable to local assessments or special taxation for improvements." McQuillin on Municipal Corporations (2 ed.), sec. 2565.

Not without significance is the omission from the act of 1927 of a provision in the act of 1923 permitting an election by the trustees between constructing the sewer system at the expense of the district and constructing it by an assessment against the property abutting the system or within a radius of the benefits arising from the improvement, leaving only the first named method operative. Both acts provide for the condemnation of land, but the law authorizing assessments against abutting property for the payment of public improvements has no relation to the exercise of the power of eminent domain. McQuillin, *supra.*

The district in question is a special taxing district. The power of the Legislature to form such districts is fully recognized and is practically unlimited. *Kelly v. Pittsburgh,* 104 U. S., 54, 26 L. Ed., 658; *Myles Salt Co. v. Bd. of Comrs.,* 239 U. S., 478, 60 L. Ed., 392. "Sometimes it is deemed wise to create a tax district for special purposes, generally for public improvements, such as for highway taxes, bridge taxes, drainage taxes, or the like, and to fix the boundaries of such district as including two or more counties or towns or even making the district wholly independent of such political boundaries." . . . "Taxing districts may be as numerous as the purposes for which taxes are levied. Equality and uniformity of taxation does not preclude the power of the state to create separate taxing districts, provided the taxes are equal and uniform within each taxing district." Cooley on Taxation, secs. 319, 321. The same writer says: "It is not essential that the political subdivisions of the state shall be the same as the taxing districts, but special districts may be established for special purposes, wholly ignoring the lines of the political subdivisions of the state. It is compulsory that the boundaries of the political divisions of the state shall be regarded in taxation only where the tax itself is for a purpose specially pertaining to one of them in its political capacity, so that the nature of the tax will determine the district. A school district may be created out of territory taken from two or more townships or counties, and the benefits of a highway, a levee, or a drain may be so peculiar that justice would require the cost to be levied either upon part of a township or county, or upon parts

of several such subdivisions of the state." *Ibid.*, sec. 325. And more specifically as to due process of law: "Property taken in the lawful exercise of the taxing power is not taken without due process of law. In the exercise of the taxing power, due process does not require that property subject to the tax or the amount of tax to be raised should be determined by judicial inquiry, and a notice and hearing as to the amount of the tax and the manner in which it shall be apportioned are generally not necessary to due process of law. A tax does not violate the due process clause because it operates unjustly nor because it constitutes double taxation; and the motives or purpose of the taxing power cannot be inquired into, to invalidate a tax as a violation of the due process clause. If a tax is within the power of the Legislature, there is no violation of the due process clause because of the results which may or will arise from the tax. It seems that a tax does not violate the due process clause, as applied to a particular taxpayer, although the purpose of the tax will result in an injury rather than a benefit to such taxpayer." *Ibid.*, sec. 143.

When land is to be taken and devoted to the public service the owner must be given an opportunity to be heard with respect to the necessity of the taking, and the compensation to be paid; but the creation by the Legislature of a special taxing district is not a taking of property in this sense and does not violate the due process clause, even where no notice is given. Cooley, sec. 143, *supra.; Carson v. Sewer Comrs.,* 182 U. S., 398, 45 L. Ed., 1151; *Mount St. Mary's Cemetery Asso. v. Mullins,* 248 U. S., 501, 63 L. Ed., 383; *Valley Farms Co. v. Westchester,* 261 U. S., 155, 67 L. Ed., 585. Nor were the appellants entitled to notice that the tax would be levied; the due process clause does not require that persons taxed by the law of a state shall have an opportunity to be present or to be heard when the tax is assessed against them. *McMillen v. Anderson,* 95 U. S., 37, 24 L. Ed., 335.

It is argued here that as the town of Kenilworth has a sewer and drainage system of its own, the appellants will derive no benefit from the creation of the system which they assail. It has been held that property which cannot be directly or indirectly benefited by a drainage district may not be included therein merely for the purpose of assessing it for the benefit of other lands in the district. *Myles Salt Co. v. Board Comrs., supra.* In that case the area "included" was an island of high land which could not be a receptacle for stagnant water, and for this reason its inclusion was "palpably arbitrary and a plain abuse of power." *Valley Farms v. Westchester, supra.* But in *Miller & Lux v. Sacramento & S. J. Drainage District,* 256 U. S., 129, 65 L. Ed., 859 it was said: "Since *Houck v. Little River Drainage District,* 239 U. S., 254, 60 L. Ed., 266, the doctrine has been definitely settled that, in the

absence of flagrant abuse or purely arbitrary action, a state may establish drainage districts and tax lands therein for local improvements, and that none of such lands may escape liability solely because they will not receive direct benefits." Moreover, *Carson v. Sewer Comrs., supra,* may be considered, under the facts in the case before us, as authority for the position that the appellants are benefited in being permitted to discharge their sewers into the more serviceable public sewers of the district.

The plaintiffs lay stress on their first proposition—that is, that they are excepted from the act of 1927 by the provisos in the eleventh section. This section authorizes the trustees, upon terms which are just and mutually satisfactory, to take over any sewer or water systems, or any part thereof, and requires them when they take it over by mutual agreement to pay a reasonable compensation. There is one proviso "that no person, firm or corporation owning any water system or sewerage system shall be compelled by the trustees to become a part of such sanitary district as is herein created unless the same is satisfactory to such person, firm, corporation or municipality owning any water system or sewerage system within the boundary of such created sanitary district," and another proviso that such systems may not be taken over or forced by the trustees to become a part of the sanitary district unless satisfactory to the owners. When taken over by mutual consent such system or systems shall be under the control of the trustees.

If the word "district" in the provisos be construed as synonymous with the boundary lines of the district these clauses would imply that the town of Kenilworth is not within the boundaries because it has not consented to become a part of the district. This construction would result in a contradiction of the third section, which, with no exception, describes the district by metes and bounds, it being admitted in the brief of the appellants that the town is within this area. If "district" signifies all the land within the prescribed boundaries, the town is obviously a part of the district by virtue of the third section, though its water system is not connected with that of the district. The provisos in our opinion, were not intended to empower the trustees to change or modify the defined area. Construing the act in its entirety and observing its manifest purpose we reach the conclusion, as contended by the defendant, that the word "district" as used in the provisos means "district system." By this construction the several sections of the act become operative, and effect is given to all. The town of Kenilworth is a part of the district, but it shall not be compelled by the trustees to become a part of the sanitary district system or to be taken over by them for this purpose without its consent. It is insisted that this construction burdens the appellants with double taxation; but the

property of the plaintiffs is not twice taxed for the benefit of the taxing district. The county commissioners levy only one tax for the district and this is uniform and equal. Furthermore, neither the State nor the Federal Constitution affords protection against double taxation by the State. *Baker v. Druesdow,* 263 U. S., 137, 68 L. Ed., 212; *Person v. Watts,* 184 N. C., 499, 508.

In view of the questions proposed we see no reason why the demurrer should not be sustained and the judgment affirmed. The property of the appellants is within the taxing district and there is no allegation in the complaint that the tax was levied for any purpose not authorized by the public-local act, or that the levy exceeds the authorized rate and amount. We omit reference to the bonded indebtedness of the district and to the area embraced in the watershed of the Swannanoa River, and reach our conclusion upon the defendant's demurrer to the allegations in the complaint. Judgment
Affirmed.