STATE OF NORTH CAROLINA BY LEAVE OF THE ATTORNEY GENERAL, EX REL, JOHN DYER, W. L. EDWARDS AND ELIZABETH S. CHILDERS v. THE CITY OF LEAKSVILLE, A MUNICIPAL CORPORATION; THE TOWN OF SPRAY, A MUNICIPAL CORPORATION; THE TOWN OF DRAPER, A MUNICIPAL CORPORATION; MEADOW GREENS SANITARY DISTRICT, AN INCORPORATED SANITARY DISTRICT; JOHN SMITH, SR., AS MAYOR OF THE CITY OF LEAKSVILLE; AND JOHN SMITH, SR., INDIVIDUALLY; GRIEF JONES, AS MAYOR OF SPRAY; AND GRIEF JONES, INDIVIDUALLY; BROADUS BURGESS, AS MAYOR OF DRAPER; AND BROADUS BURGESS, INDIVIDUALLY; BILLY ARMFIELD AS COMMISSIONER; AND BILLY ARM-FIELD, INDIVIDUALLY; W. D. LASHLEY, JR. AS COMMISSIONER; AND W. D. LASHLEY, JR., INDIVIDUALLY; JONES NORMAN AS COMMISSIONER; AND JONES NORMAN, INDIVIDUALLY; D. BLAIR BURKE AS COMMIS-SIONER; AND D. BLAIR BURKE, INDIVIDUALLY; MRS. ODESSA JOHN-SON AS COMMISSIONER; AND MRS. ODESSA JOHNSON, INDIVIDUALLY; AND JIM ROBERTSON AS COMMISSIONER; AND JIM ROBERTSON, IN-DIVIDUALLY; DAVID COOK AS COMMISSIONER; AND DAVID COOK, IN-DIVIDUALLY; MRS. ODESSA THOMPSON AS COMMISSIONER; AND MRS. ODESSA THOMPSON, INDIVIDUALLY; GLENN CARTER AS COMMIS-SIONER; AND GLENN CARTER, INDIVIDUALLY; J. MOIR DeHART AS COM-MISSIONER; AND J. MOIR DeHART, INDIVIDUALLY; DANIEL SQUIRES AS COMMISSIONER; AND DANIEL SQUIRES, INDIVIDUALLY; HOMER WOODS AS COMMISSIONER; AND HOMER WOODS, INDIVIDUALLY; JAMES R. HIXON, AS COMMISSIONER; AND JAMES R. HIXON, INDIVIDUALLY; GLENN BOYLES AS COMMISSIONER; AND GLENN BOYLES, INDIVIDUALLY; JOHN E. SETTLIFF AS COMMISSIONER; AND JOHN E. SETTLIFF, IN-DIVIDUALLY; WILLIAM O. MOSER AS COMMISSIONER; AND WILLIAM O. MOSER, INDIVIDUALLY; GARVIN WARREN AS COMMISSIONER; AND GARVIN WARREN, INDIVIDUALLY; ROBERT I. WILKERSON AS COM-MISSIONER; AND ROBERT I. WILKERSON, INDIVIDUALLY; HENRY KNOTT AS COMMISSIONER; AND HENRY KNOTT, INDIVIDUALLY; GLENN SIMPSON, FIRE CHIEF OF THE CITY OF LEAKSVILLE; AND GLENN SIMP-SON, INDIVIDUALLY; WOODROW VESTAL, FIRE CHIEF OF THE TOWN OF SPRAY; AND WOODROW VESTAL, INDIVIDUALLY; LANDIS POWELL, FIRE CHIEF OF THE TOWN OF DRAPER; AND LANDIS POWELL, INDIVID-UALLY; M. O. CLARK, POLICE CHIEF OF THE CITY OF LEAKSVILLE; AND M. O. CLARK, INDIVIDUALLY; WISEMAN TERRY, POLICE CHIEF OF THE TOWN OF SPRAY; AND WISEMAN TERRY, INDIVIDUALLY; WILLIE AD-KINS, POLICE CHIEF OF THE TOWN OF DRAPER; AND WILLIE ADKINS, INDIVIDUALLY; AND THE PURPORTED "CITY OF EDEN"

No. 766

(Filed 21 January 1969)

1. Statutes § 1— non-revenue statutes — proof of enactment

With respect to the passage of non-revenue bills, ratification certifi-cates signed by the President of the Senate and the Speaker of the House are conclusive of the fact that a bill was read three times and was passed three times in each house of the General Assembly in compliance with Art. II, § 23, N. C. Constitution, and the journals of the House and Sen-ate are not competent evidence to contradict the certificates of the pre-siding officers that a bill was duly read in each house three times and passed on each reading.

**2. Statutes § 1— revenue statutes — proof of enactment**

With respect to the passage of revenue bills, the House and Senate Journals, not the certificates of ratification signed by the presiding officers, are the exclusive sources of proof as to whether the revenue bill was read on three several days in each house of the General Assembly and passed three several readings on three different days and that the yeas and nays on the second and third readings were entered on the journals in compliance with Art. II, § 14, N. C. Constitution.

**3. Statutes § 1— proof of enactment of revenue bill**

Findings by the trial court that the revenue bill in question was read three several times in each house of the General Assembly and passed three several readings on three different days with the yeas and nays having been recorded on the second and third readings and entered on the journals *are held* supported by the House and Senate Journals which were before the court.

**4. Taxation § 2; Municipal Corporations § 39— uniformity in taxation — double taxation by different authorities**

Where a legislative Act authorized the consolidation of four separate municipalities into a single new municipality, but left unaffected a sewerage district which included within its limits three of the former municipalities but not the fourth, the constitutional requirement of uniformity in taxation is not violated by the fact that property within both the new municipality and the sewerage district is subject to taxation by both authorities while property in the new municipality which is outside the sewerage district is subject only to city tax levies, the rule of uniformity not being violated by double taxation resulting from taxes levied by different authorities if each authority adhers to the uninformity rule in its levies. Ch. 967, Session Laws of 1967; Art. V, § 3, N. C. Constitution.

**5. Taxation § 2— inequality in taxation — municipal corporations with overlapping boundaries**

Any remedy for inequality in tax burdens resulting from the creation of municipal corporations with partially overlapping boundaries must be supplied by the General Assembly, which created the taxing districts and fixed their boundaries, and not by the courts.

**6. Municipal Corporations § 1— creation of municipalities**

The Legislature, not the courts, has the sole power to create municipal corporations.

APPEAL by plaintiffs from *Copeland, J.,* April 8, 1968 Session, ROCKINGHAM Superior Court.

The plaintiffs, residents and taxpayers who, on and prior to September 12, 1967, had resided within the limits of Leaksville, Draper or Spray, instituted this civil action against the named defendants for the purpose of challenging the validity of Chapter 967, Session Laws of 1967, which purported to authorize the consolida-

tion of the named municipalities, together with Meadow Greens Sanitary District, into a single municipality. The specific boundaries of the new city were set out in the consolidation act. The consolidation was conditioned on voter approval.

The election was held as provided. A majority of the votes in all units was cast for consolidation. "Eden" was selected as the name of the consolidated municipality.

The Act provided that if the voters approved the consolidation the four municipalities were abolished, all their properties, rights, duties and obligations were transferred to and assumed by the new city. All ordinances, franchises, etc. in effect before the consolidation were to be observed. All officers and employees were to continue until their successors were chosen.

Long before Chapter 967 was enacted, the Eden Metropolitan Sewerage District was in operation as a municipality. It was not abolished. The plaintiffs' amended complaint alleged, and the answer admitted, the following:

"70.  Eden Metropolitan Sewerage District is a municipal corporation incorporated pursuant to N.C. G.S. 153-297. The sewerage District had, and has, as one of its functions, the disposal of sewage for the area comprising Leaksville, Draper and Spray, but neither had nor has any function insofar as the area comprising the Meadow Greens Sanitary District is concerned. The Sewerage District has a large outstanding bonded indebtedness of at least $2,000,000.00 secured by the power of the Board of the Sewerage District to levy taxes within only the areas which comprised Leaksville, Draper and Spray and, with the tax revenues therefrom derived, to pay the indebtedness."

As a result of the consolidation, the taxpayers of the Metropolitan Sewerage District (Leaksville, Draper and Spray) were taxed for city purposes and also for the payment of Metropolitan's outstanding obligation. All other taxpayers of the City of Eden were exempt from liability for Metropolitan's indebtedness.

The plaintiffs attacked the constitutionality of Chapter 967, Session Laws of 1967, upon the grounds: (1) That House Bill No. 1139 was not passed on three several readings in each House of the General Assembly and was not agreed to by each House respectively, as required by the State Constitution; and (2) The failure to abolish the Eden Metropolitan Sewerage District and transfer its obligations to Eden had the effect of relieving property in Meadow Greens and in the area outside the former limits of Leaksville,

Draper and Spray from tax liability for the Metropolitan Sewerage District debts. Section 8 of Chapter 967 contains this provision:

"Nothing in this Act shall be deemed or construed to affect in any manner the Eden Metropolitan Sewerage District of Rockingham County, North Carolina, or to affect in any manner any rights or obligations, including outstanding indebtedness, of the Eden Metropolitan Sewerage District of Rockingham County, North Carolina."

The plaintiffs allege the lack of tax uniformity in the City of Eden, resulting in failure to abolish Metropolitan, and to require Eden to assume its debts, violate Article V, Section 3, Article II, Section 14, of the North Carolina Constitution, and the Fourteenth Amendment to the United States Constitution.

The plaintiffs prayed for relief: (1) That Chapter 967, Session Laws of 1967, be declared void; (2) That the municipalities of Leaksville, Draper, Spray and Meadow Greens Sanitary District be restored to their former status; (3) That their former officials be required to resume their former duties and to render a proper accounting to their former municipalities; and (4) That the defendants be restrained from expending any tax funds and from performing any duties or functions in the name of the City of Eden.

The parties waived a jury trial and agreed that Judge Copeland should hear the evidence, find the facts, state his conclusions of law and render judgment. After hearing and review of the House and Senate Journals, the certificates of presiding officers of both the House and Senate, Judge Copeland made these findings:

"1.   That this action was instituted by the plaintiffs to challenge the validity and to prevent the enforcement of House Bill No. 1139, as enacted as Chapter 967 of the 1967 Session Laws of the General Assembly of North Carolina, entitled 'An Act to Authorize an Election on the Question of Consolidation of the Town of Draper, the City of Leaksville, the Town of Spray, and the Meadow Greens Sanitary District as a Single Municipality.'

2.   That on September 12, 1967, the Town of Draper, the City of Leaksville, and the Town of Spray were duly incorporated municipalities under the laws of North Carolina and had been for many years, and that Meadow Greens Sanitary District was a duly incorporated sanitary district.

*          *          *

That on said date the Town of Draper, the City of Leaksville, and the Town of Spray did not own a sewage treatment plant; and that untreated sewage from said municipalities was emptied into the Dan River and another river.

4. That on September 12, 1967, an election was duly held in said municipalities and in the adjoining central area pursuant to Chapter 967 of the 1967 Session Laws of the State of North Carolina, with notice of such election having been duly published in accordance with the provisions of said Act, for the purpose of determining whether said areas should have a single consolidated municipal government; . . .

5. That Chapter 967 of the 1967 Session Laws of the General Assembly of North Carolina was duly and lawfully enacted into law by the North Carolina General Assembly, same having been read three several times in each House of the General Assembly and passed on three several readings, which readings were on three different days, with the yeas and nays on the second and third readings having been entered on the journal.

6. That Eden Metropolitan Sewerage District is a municipal corporation incorporated pursuant to North Carolina N.C. G.S. 153-297, and same is a separate legal entity and it was not included within the area to be consolidated into a single municipality as provided by Chapter 967 of the 1967 Session Laws of the General Assembly of North Carolina.

7. That in the incorporation of the City of Eden, all the requirements of the North Carolina and United States Constitutions and of all applicable State and Federal laws have been duly and fully complied with in all respects."

The court concluded as a matter of law, and adjudged:

"1. That House Bill No. 1139, enacted as Chapter 967 of the 1967 Session Laws of the General Assembly of North Carolina was duly adopted in accordance with the provisions of the North Carolina and United States Constitutions, and in accordance with all applicable State and Federal laws.

2. That, under the facts as found and under the allegations as contained in the pleadings filed in the cause, the City of Eden, North Carolina, has been duly incorporated and now exists as a municipal corporation of the State of North Carolina in compliance with all lawful requirements.

3. That the plaintiffs are not entitled to any of the relief

prayed for in the Complaint or Amended Complaint filed herein, and the same is hereby denied, and this action is hereby dismissed.

4. That the City of Eden is lawfully constituted in all respects and is a duly existing municipality under the laws of the State of North Carolina, and is entitled to the relief prayed for in the Answer to the Amended Complaint filed herein, and the costs of this action are taxed against the plaintiffs."

From the judgment, the plaintiffs gave notice of appeal to the North Carolina Court of Appeals. Upon proper application and because of the significant public interest in the legal questions involved in the appeal and the likelihood that delay in their final adjudication might jeopardize the rights of both the parties and the public, we granted certiorari without prior review by the North Carolina Court of Appeals.

*T. W. Bruton, Attorney General, Harry W. McGalliard, Deputy Attorney General for the State.*

*W. Harold Edwards, Jordan, Wright, Nichols, Caffrey & Hill, and Edward L. Murrelle by Welch Jordan and Edward L. Murrelle, for plaintiff appellants.*

*Floyd Osborne; H. L. Fagg; Earl Vaughn; Womble, Carlyle, Sandridge & Rice by E. Lawrence Davis, III and Irving E. Carlyle, for defendant appellees.*

HIGGINS, J.

The plaintiffs' appeal presents the question whether House Bill No. 1139 (Chapter 967, Session Laws of 1967) was passed by the General Assembly in the manner required by Article II, Section 14, North Carolina Constitution. If the question be answered in the affirmative, the plaintiffs contend the Act should be declared unconstitutional upon the ground it violates Article V, Section 3, North Carolina Constitution by permitting levies in violation of the uniform tax rule.

[1] With respect to the first question, Article II, Section 23 of the North Carolina Constitution provides: ". . . All bills and resolutions of a legislative nature shall be read three times in each house before they pass into laws, and shall be signed by the presiding officers of both houses." This Court has held that the ratification certificates signed by the President of the Senate and the Speaker of the House are conclusive of the fact that the bill was read three

times and was passed three times in each house of the General Assembly. *Carr v. Coke,* 116 N.C. 223, 22 S.E. 16; *Commissioners v. Snugg,* 121 N.C. 394, 28 S.E. 539; *Black v. Commissioners,* 129 N.C. 121, 39 S.E. 818; *Commissioners v. DeRosset,* 129 N.C. 275, 40 S.E. 43; *Wilson v. Markley,* 133 N.C. 616, 45 S.E. 1023; *Frazier v. Commissioners,* 194 N.C. 49, 138 S.E. 433. The certificates of the presiding officers are conclusive that the requirements of Section 23 were observed in the passage of the bill. The journals of the House and Senate are not competent evidence to contradict the certificates of the presiding officers that a bill was duly read in each house three times and passed on each reading. *Broadnax v. Groom,* 64 N.C. 244. Such is the rule with respect to passage of non-revenue bills.

[2]    However, Section 14 of the same article provides:

". . . No law shall be passed to raise money on the credit of the State, or to pledge the faith of the State, directly or indirectly, for the payment of any debt, or to impose any tax upon the people of the State, or to allow the counties, cities or towns to do so, unless the bill for the purpose shall have been read three several times in each House of the General Assembly and passed three several readings, which readings shall have been on three different days, and agreed to by each house respectively, and unless the yeas and nays on the second and third readings of the bill shall have been entered on the journal."

With respect to the requirements in the above quoted revenue section, the House and Senate Journals, and not the certificates of ratification signed by the presiding officers, are the sources of proof as to whether the bill was read on three several days in each house of the General Assembly and passed three several readings on three different days and that the yeas and nays on the second and third readings were entered on the journals.

The additional steps necessary to show the passage of revenue acts are not within the conclusive presumption arising from the certificates of the presiding officers. The journals are made the exclusive sources of such proof. A full discussion, and citations of authority, appear in Justice Connor's opinion in *Frazier v. Commissioners, supra.*

"The Constitution requires that it should appear, not from the entries on the original bill, but from the Journal, that the bill was properly read and the necessary entry of yeas and nays was made. If the Journal should show that bill was properly passed, no evidence will be received to contradict what is therein recorded." *Frazier v. Commissioners, supra.*

[3]    Judge Copeland found that House Bill No. 1139, now Chapter 967, Session Laws of 1967, was read three several times in each house of the General Assembly and passed on three several readings, which readings were on three different days with the yeas and nays having been recorded on the second and third readings, and entered on the journals. This finding, in all respects, was supported by the House and Senate Journals. The House Journal shows that House Bill No. 1139 was introduced in the House of Representatives on May 25, 1967 and referred to the Committee on Courts and Judicial Districts. The bill was amended by committee and reported to the House with a favorable report on June 12, 1967. The House considered and approved the amendment. On June 14, 1967, by a recorded roll call vote, 113 named Representatives having voted for passage and none against, the bill passed its second reading and remained on the calendar. On June 15, 1967, by a recorded roll call vote, 115 named Representatives having voted for passage and none against, the bill passed its third reading and was ordered engrossed and sent to the Senate.

The Senate Journal shows that on June 16, 1967 House Bill No. 1139 was received in the Senate as a message from the House, and was referred to the Committee on Calendar. On June 22, 1967, by a recorded roll call vote, 46 Senators having voted for passage and none against, House Bill No. 1139 passed its second reading and remained on the calendar. On June 23, 1967, by a recorded roll call vote, 44 Senators having voted for passage and none against, House Bill No. 1139 passed its third reading and was ordered enrolled.

The records before Judge Copeland furnished authentic proof supporting the finding and conclusion that House Bill No. 1139 was duly passed and is valid and binding.

[4]    Although Chapter 967, Session Laws of 1967 (with voter approval) abolished the municipalities of Leaksville, Draper, Spray and Meadow Greens Sanitary District; however, the Act did not abolish the Eden Metropolitan Sewerage District, which included, within its limits, all of Leaksville, Draper and Spray, but did not include Meadow Greens Sanitary District. Property within Metropolitan continued subject to tax for all of Metropolitan's liabilities, including its large bonded debt. Property within the new municipality, but not within Metropolitan, is not subject to levy for Metropolitan's obligations. By specific provision of Section 8 of Chapter 967, the consolidation left the Eden Metropolitan Sewerage District unaffected. Its functions, obligations and taxing authority are left intact.

The plaintiffs contend the rule of uniformity is broken in that property both within the new municipality and within the Metropolitan Sewerage District is subject to both tax levies, whereas the property in the city, but outside Metropolitan, is subject only to the city tax levies. Unquestionably the Constitution requires that the rule of uniformity be observed. It is observed if the rate is uniform throughout each taxing authority's jurisdiction. When property is within more than one taxing authority, each has the right to make its own levy. The constitutional requirement is that taxing powers shall be exercised "by uniform rule". The rule of uniformity is not violated by double taxation resulting from taxes levied by different authorities if each authority adheres to the uniformity rule in its levies. *Anderson v. Asheville*, 194 N.C. 117, 138 S.E. 715; *Kenilworth v. Hyder*, 197 N.C. 85, 147 S.E. 736; *Sabine v. Gill*, 229 N.C. 599, 51 S.E. 2d 1; *Jamison v. Charlotte*, 239 N.C. 682, 80 S.E. 2d 904; *Myles Salt Co. v. Board of Commissioners*, 239 U.S. 478, 36 S.C. 204, 60 L. Ed. 392, *McQuillan on Municipal Corporations*, 2d Ed., Sec. 2565.

> " 'Sometimes it is deemed wise to create a tax district for special purposes, generally for public improvements, such as for highway taxes, bridge taxes, drainage taxes, or the like, and to fix the boundaries of such district as including two or more counties or towns or even making the district wholly independent of such political boundaries.' . . . 'Taxing districts may be as numerous as the purposes for which taxes are levied. Equality and uniformity of taxation does not preclude the power of the state to create separate taxing districts, provided the taxes are equal and uniform within each taxing district.' " *Kenilworth v. Hyder, supra.*

[5]  The plaintiffs allege the failure to abolish Metropolitan and transfer its duties and obligations (including its heavy bonded debt) to the new municipality resulted in an unequal tax burden on the property within the Metropolitan taxing area. True, this burden is not shared by property which is within the city but is outside Metropolitan. Inequality in tax burdens follows the creation of municipal corporations with partially overlapping boundaries. The remedy, if one is due, must be supplied by the agency which created the taxing districts and fixed their boundaries. The General Assembly and not the court, has the requisite power.

[6]  The Legislature has the sole power to create municipal corporations. The courts do not have that power.

"Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them. . . . The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state. . . . The state, therefore, at its pleasure, may modify or withdraw all such powers, . . . expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. . . . In all these respects the state is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. . . ." *Hunter v. Pittsburgh*, 207 U.S. 161, 52 L. Ed. 151.

The questions whether the Eden Metropolitan Sewerage District of Rockingham County should have been, or should be, abolished, and its duties and obligations assumed by the city or left undisturbed (as provided in the Act) were within legislative, not judicial, competence. Appeal for relief, if warranted, should be to the General Assembly.

We have carefully considered the plaintiffs' excellent brief and examined the cases therein cited. However, the record fully supports the findings, conclusions, and judgment of the Superior Court. The judgment is

Affirmed.