MASTER HATCHERIES, INC. v. J. HOWARD COBLE, NORTH CAROLINA COMMISSIONER OF REVENUE

No. 7415SC32

(Filed 17 April 1974)

Taxation § 31— use tax — machinery in chicken hatchery — manufacturing

A commercial chicken hatchery is a "manufacturing industry or plant" within the meaning of G.S. 105-164.4(1) (h); therefore, machinery purchased for use in the hatchery is subject to a use tax of only 1% rather than the regular rate of 3%.

Judge CAMPBELL dissenting.

APPEAL by plaintiff from Hall, Judge, 20 August 1973 Session of Superior Court held in CHATHAM County.

This is an action against the Commissioner (now Secretary) of Revenue for a refund of taxes paid under protest.

In 1972 plaintiff purchased some machinery for use in its hatchery business. It paid use tax on this machinery at the 1% rate provided in G.S. 105-164.4(1) (h) for "mill machinery or mill machinery parts and accessories to manufacturing industries and plants." The Commissioner of Revenue took the position that plaintiff was not a manufacturing industry or plant

within the meaning of this statute and that the regular rate of 3% imposed under G.S. 105-164.6(1) was applicable and assessed additional tax in the amount of $5,864.60. Plaintiff paid this additional tax under protest and filed claim for refund which was denied.

The facts were stipulated by the parties and are substantially as follows: Plaintiff operates a commercial hatchery, purchasing fertile chicken eggs, incubating the eggs until they hatch into baby chicks, and selling the chicks. As the eggs are received at plaintiff's hatchery, they are cleaned and any oversized or undersized eggs are removed. They are then placed in an incubator, where they remain for 18 days. The temperature in the incubator is maintained at 99°, and the humidity is maintained at 87%. Every hour the eggs in the incubator are turned mechanically in order to prevent the embryo from remaining in one position. After eighteen days in the incubator, the eggs are placed in a "hatching machine," where the temperature is kept at 98° and the humidity at 90%. The eggs hatch after three days in the hatching machine, and the chicks are graded, vaccinated, debeaked, placed in boxes, and sold.

The superior court held that the hatchery operated by plaintiff is not a manufacturing industry or plant within the meaning of G.S. 105-164.4(1)(h) and the equipment used by plaintiff was taxable at the regular 3% rate. Judgment was entered for defendant denying any refund.

Plaintiff appealed.

*Attorney General Morgan, by Associate Attorney Norman L. Sloan, for defendant appellee.*

*Ray F. Swain for plaintiff appellant.*

BALEY, Judge.

The sole issue in this case is whether or not plaintiff is engaged in "manufacturing" within the meaning of G.S. 105-164 (1)(h). If plaintiff is a manufacturer, then the machinery it purchased should be taxed at a rate of only 1%, and plaintiff is entitled to a refund of the additional use tax assessment it paid. But if plaintiff is not manufacturer, the trial court acted properly in denying a refund.

In *Duke Power Co. v. Clayton, Comr. of Revenue*, 274 N.C. 505, 513, 514, 164 S.E. 2d 289, 295, "manufacturing" was defined

as " 'the producing of a new article or use or ornament by the application of skill and labor to the raw materials of which it is composed,' " and as "the making of a new product from raw or partly wrought materials." A "manufacturer" was defined in *Bleacheries Co. v. Johnson, Comr. of Revenue,* 266 N.C. 692, 696, 147 S.E. 2d 177, 179, as " 'one who changes the form of a commodity, or who creates a new commodity.' " Plaintiff contends that its activities conform precisely to these definitions. It uses fertile chicken eggs as its raw material, and it applies skill and labor to the eggs by maintaining them at the proper temperature and humidity and turning them periodically in its machines. As a result, it produces a new article, baby chicks. Defendant, on the other hand, contends that the production of living organisms, such as baby chicks, cannot constitute manufacturing. Defendant maintains that sufficient credit is not accorded to the hen and rooster; that chicks are produced by a natural process of growth and development, not manufacturing; that the hatchery does not create a chick from an egg, but merely provides a suitable environment in which the natural development of the egg can take place.

The exact issue involved in this case is one of first impression in North Carolina, but it has been considered by the courts of three other states. In *Miller v. Peck,* 158 Ohio St. 17, 106 N.E. 2d 776 (1952), the Supreme Court of Ohio held that the operation of a chicken hatchery does constitute manufacturing. In Arkansas and Maryland, the courts have accepted defendant's position and held that a hatchery operator is not a manufacturer. *Peterson Produce Co. v. Cheney,* 374 S.W. 2d 809 (Ark. 1964); *Perdue, Inc. v. State Dept. of Assessments & Taxation,* 264 Md. 228, 286 A. 2d 165 (1972).

What constitutes manufacturing or who is a manufacturer within the meaning of a tax statute may well depend upon the terms of the specific statute involved and the circumstances of a particular case. *See* Annot., 17 A.L.R. 3d 7. As pointed out by the Ohio court in *Miller v. Peck, supra,* it is impossible to make a clearcut distinction between industrial processes which make use of living organisms and those which do not. In a tax statute the general terms used by the legislature, such as "manufacturing," frequently cannot be defined with complete precision. In interpreting the intent of the legislature it cannot be assumed that a manifestly inequitable result was envisioned. In determining whether the operation of a chicken hatchery consti-

Hatcheries, Inc. v. Coble

tutes manufacturing, it is important to consider the general rule that taxing statutes are construed in favor of the taxpayer and against the State, *Pipeline Co. v. Clayton, Comr. of Revenue,* 275 N.C. 215, 166 S.E. 2d 671, that statutory exemption from tax is strictly construed against the claim of exemption, *Yacht Co. v. High, Comr. of Revenue,* 265 N.C. 653, 144 S.E. 2d 821, and the constitutional requirement that taxation must be imposed by a uniform rule. N. C. Constitution, Article 5, Section 2; *see Dyer v. City of Leaksville,* 275 N.C. 41, 165 S.E. 2d 201; *Hospital v. Guilford County,* 221 N.C. 308, 20 S.E. 2d 332.

In our modern day the poultry industry as one of our major sources of food has become a large and complex industry. The egg producer, hatchery, poultry raiser, and chicken processor are integral parts of that industry. As the stipulated facts in this case indicate, the industrial process begins when the fertilized egg is sold by the farmer to commercial hatcheries such as the plaintiff. The egg contains a living reproductive cell which may or may not produce a baby chick. Through artificial means the egg is stimulated, developed, and transformed into a different form of life—the baby chick. Sophisticated machinery controls temperature and humidity and mechanically turns the incubator trays to prevent the embryo from remaining in one position. On the eighteenth day the eggs are transferred to hatching trays which are in turn placed in a hatching machine where the trays remain in a steady position with a constant temperature. On the twenty-first day the chick emerges from the shell, is graded, vaccinated, debeaked, counted, and placed in chick boxes, one hundred to each box, and shipped to the chicken raiser. The incubation process is a continuing action conducted as a business enterprise for profit, and in the case of the plaintiff there are three hundred and sixty-two thousand eggs incubated and approximately three hundred thousand baby chicks actually hatched each week.

After the baby chicks are purchased by those in the poultry business who feed and care for them until they become mature, they are sold to chicken processing plants to be converted into food. The North Carolina Department of Revenue has held that chicken processors, who kill chickens and prepare them for use as food, are manufacturers, and are entitled to pay use tax on their machinery at the reduced rate of 1% while plaintiff who processes the fertilized egg until it becomes a baby chick must pay the 3% use tax on its machinery. Both the hatchery and

the chicken processor are part of the same industry; they are similar in their economic role; they are both highly mechanized. In fact, if the hatchery equipment were adjusted to produce a higher temperature in the incubators and kill the eggs instead of hatching them, the hatchery would be classified as a processor itself and the identical equipment would be treated differently for tax purposes.

We are not persuaded that there is a proper basis for classifying the processing of chickens as "manufacturing" for the purpose of granting tax exemption under G.S. 105-164.4 (1) (h) and denying that interpretation of the statute to the operation of hatching chickens.

G.S. 105-164.4 (1) (g) authorizes the 1% use tax rate to apply to the machinery of "poultry farmers, egg producers, and livestock farmers for use by them in the production of . . . poultry, eggs, or livestock." The Revenue Department has ruled that commercial hatcheries do not qualify as poultry farmers under this statute nor as a "manufacturing industry or plant" under Section (h) which results in an anomalous situation where the egg producer, the poultry raiser, and the chicken processor are all granted the 1% use rate on their machinery while the other essential process in the poultry industry, the hatchery, is denied this favorable tax treatment.

While the word "manufacturing" does not ordinarily refer to the production of living organism, in the context of the tax statutes of this State as they have been applied by the Revenue Department, we hold that a commercial chicken hatchery is a "manufacturing industry or plant" within the meaning of G.S. 105-164.4 (1) (h). The additional use tax of $5,864.60 assessed against plaintiff should be refunded. The judgment of the Superior Court is reversed.

Reversed.

Judge HEDRICK concurs.

Judge CAMPBELL dissenting.

This is a matter for the legislature and I therefore dissent.